| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

| | | |
|---|---|---|
| CAN CAPITAL ASSET SERVICING, INC., F/K/A NEWLOGIC BUSINESS LOANS, INC., | § § § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action _____ |
| | § | |
| SAMUEL B. PEGRAM MD PA, D/B/A RHEUMATIC DISEASE CLINIC OF HOUSTON and SAMUEL B. PEGRAM, Individually, | § § § § | |
| Defendants. | § | |

## Amended Complaint

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

1.      *Parties.*  Plaintiff, CAN CAPITAL ASSET SERVICING, INC. F/K/A NEWLOGIC BUSINESS LOANS, INC. ("CCAS"), is a corporation organized under the laws of Massachusetts. CCAS' principal place of business is in New York State.

2.      Defendant Samuel B. Pegram MD PA, d/b/a Rheumatic Disease Clinic of Houston ("Borrower" or "Rheumatic Disease Clinic of Houston") is a professional association doing business in Texas, and may be served with process by serving its President and Owner Samuel B. Pegram at 4825 Alemeda Rd., Houston, Harris County, Texas 77004 or at 3004 Meadowmist Court, Pearland, Brazoria County, Texas 77584 or wherever he may be found.

3.      Defendant Samuel B. Pegram ("Guarantor" or "Pegram"), is a citizen of the state of Texas and may be served with process at 4825 Almeda Rd., Houston, Harris, County, Texas 77004 or at 3004 Meadowmist Court, Pearland, Brazoria County, Texas 77584 or wherever he may be found.

4.     *Jurisdiction.*  The district court has jurisdiction under 28 U.S.C. § 1332 (a)(1) because plaintiff and the defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.  Plaintiff is a Massachusetts corporation authorized to do business in Texas, while the Defendants are a Texas corporation, with its principal place of business in Texas, and a citizen/resident of the state of Texas.

5.     *Venue.*  Venue is proper in this district under 28 U.S.C. § 1391 (a)(1) and/or § 1391 (b)(1) because all defendants reside in this district.  Further, a substantial part of the events or omissions giving rise to this claim occurred in this district, thus venue is also proper under 28 U.S.C. § 1391 (a)(1) and/or § 1391 (b)(2).

6.     *Conditions Precedent.*  All conditions precedent have been performed or have occurred.

7.     *Facts.*  On or about January 25, 2016, Borrower entered into a Business Loan Agreement ("Agreement") with WebBank, pursuant to which WebBank loaned the principal amount of $330,969.80 ("Loan Amount") to Borrower.  See Exhibit 1, the Agreement.

8.     WebBank assigned the Agreement to CCAS on February 2, 2016.   See Exhibit 2, the Bill of Sale.

9.     Pursuant to the terms and conditions of the Agreement, Borrower agreed to pay the Repayment Amount(s) to Lender through Weekday ACH Debits as set forth in Section 5.1 of the Agreement. Further, Borrower authorized and requested Lender and/or each Operator to withdraw from the Designated Account a Weekday Payment on each Weekday until Lender had received all amounts due under the Agreement, including without limitation each Weekday Payment listed on Schedule A, attached as Exhibit 3, plus all late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due pursuant to the Agreement.

10.     Pursuant to the Agreement, Borrower agreed to abide by certain "Representations, Warranties and Covenants" as defined in the Agreement, including, without limitations, the

following: (a)  to not materially change the nature of your business from the type originally disclosed to Lender in connection with the Agreement; and  (b) to not sell or otherwise transfer its business without: (i) lender's express written consent, and (ii) the assumption by transferee of all of Borrower's obligations under the Agreement using documentation reasonably satisfactory to lender. See Exhibit 1, page 5, section 10.

11.      As part of the Agreement, Pegram executed a personal guaranty (the "Personal Guaranty") pursuant to which he personally guaranteed "the prompt payment to Lender of all amounts owed by the Borrower. . . under the above Agreement."  The guaranty was one of payment and performance ant not a guaranty of collection.  Among other things, Pegram, as guarantor, agreed that Lender "may extend, transfer and amend the Agreement and . . . [would] be bound by all such changes."  In addition, Pegram waived all defenses, legal or equitable, available to him and waived all notices to which he might be entitled by law, "including notice of protest, presentment, transfer, demand and default."  See Exhibit 1, page 11, which contains the Personal Guaranty.

12.      Upon information and belief Borrower's last payment was on June 25, 2018, thereafter, Borrower breached the Agreement by not making further payments and both Borrower and Guarantor are liable for Borrower's breach.

13.      CCAS has duly demanded that Borrower and Guarantor cure their breach of the Agreement and pay CCAS, but Defendants have failed to do so.  See Exhibit 4, demand letter dated June 6, 2019, sent to Rheumatic Disease Clinic of Houston and Pegram, and Exhibit 4A, the signed CM/RRR green card dated June 11, 2019.

14.      By reason of the foregoing, CCAS has been damaged in the amount of $330,969.80.

15.      Pursuant to the Loan Agreement, Defendants are liable for reasonable costs associated with a breach of the Loan Agreement, including but not limited to court costs, and attorney's fees. CCAS has given Defendants written notice that it intends to enforce provisions of the Agreement

that require the payment of all costs of enforcement, including reasonable attorneys' fees. Demand pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code has been made.

16.     *First Cause of Action.*  Plaintiff incorporates Paragraphs 1 through 15 inclusive, as though fully set forth herein, and pleads its First Cause of Action – Breach of Contract.

17.     By reason of the foregoing, Borrower has breached the Loan Agreement, causing CCAS to suffer damages.

18.     Plaintiff is entitled to recover damages under the Loan Agreement in an amount equal to the sum of $330,969.80.  Both unpaid principal and interest are included in calculating the jurisdictional amount.  *See Brainin v. Melikan,* 396 F.2d 153, 155 (3d Cor. 1968) (interest included in computing jurisdictional amount which is an integral part of the aggregate amount of damages claimed); *Tupperware Home Parties v. Stewart,* 40 F.3d 384 1994 WL. 652497 at *4 n.5 (5th Cir. 1994) and *Muddu Oils Refinery Ltd. V. Dykes,* C.A. No. 4:06-CV-825-BE, 2007 WL 894568, at *3 (N.D. Tex. March 26, 2007. ("Interest that is an integral part of the claim, such as interest owed as part of a contractual obligation and exacted as the agreed upon price for the hire of money, becomes part of the principal for jurisdiction purposes." Cites omitted).  Further, attorneys fees are sought pursuant to both the Contract and Chapter 38 of the Texas Civil Practice and Remedies Code.  Attorneys fees are based on the contingent fee arrangement with plaintiff which is 30% of the debt.  Such an arrangement is usual and customary for collection litigation; alternatively, the hourly rate for lead counsel is $400.00 per hour.

19.     *Second Cause of Action.*  Plaintiff incorporates Paragraphs 1 through 18 inclusive, as though fully set forth herein, and pleads its Second Cause of Action Breach of Personal Guaranty.

20.     Defendant Pegram provided a Personal Guaranty, pursuant to which Pegram personally guaranteed prompt payment to Lender of all amounts due.

21. Borrower breached one or more of the Contractual Covenants in the Agreement with Plaintiff, triggering the Personal Guaranty.

22. CCAS has demanded that Pegram cure Borrower's breach, but Pegram has refused. As a result, Pegram has breached the Personal Guaranty, causing damages to CCAS in the amount of $330,969.80. Attorney's fees pursuant to the contract and Chapter 38 of the Texas Civil Practice and Remedies Code are sought.

23. *Third Cause of Action.* The third cause of action is suit to foreclose security interests/collateral. Contemporaneously with the execution of the Business Loan Agreement, Borrower also executed a Security Agreement dated January 25, 2016, granting Lender, as secured party, a security interest in certain personal property of Borrower including:

> (a) any and all amounts owing to you now or in the future from any merchant processor, (b) all Accounts; (c) all Chattel Paper (including Tangible Chattel Paper and Electronic Chattel Paper); (d) all Instruments; (e) all Goods, including, without limitation, Equipment, motor vehicles, inventory, Farm Products, Accessions, and as Extracted Collateral; (f) all Documents; (g) all General Intangibles (including, without limitation, Payment Intangibles and software); (h) all Deposit Accounts; (i) all Letter of Credit Rights; (j) all Investment Property; (k) all Supporting Obligations; (l) all trademarks, trade names, service marks, logos and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and all renewals, reissues and extensions thereof (collectively "IP"); (m) any records and data relating to any of the foregoing, whether in the form of a writing photograph, microfilm, microfiche, or electronic media, together with all of your right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and (n) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process. You irrevocably authorize us and our designees at any time and from time to time to file; (i) in any filing office in any jurisdiction any initial financing statements and amendments thereto that indicate the collateral therein as all of your assets or words of similar effect, regardless of whether such description is greater in scope than the collateral pledged to us hereunder; and (ii) such recordations with the USPTO we deem necessary or desirable to evidence the security interest in IP described above.

24.   A copy of the Security Agreement is included within the Business Loan Agreement executed by Defendant Pegram on behalf of Borrower.  See Exhibit 1, page 5, Section 9.  Plaintiff is entitled to judicial foreclosure of its lien against the subject collateral to satisfy any judgment rendered.  In accordance with the Security Agreement, and by Borrower's failure to pay as agreed, Plaintiff further sues for possession of the collateral identified in the Security Agreement for the purpose of selling same and applying the proceeds to the balance due, if not otherwise satisfied.

25.   *Default.*  CCAS has demanded that defendants pay the indebtedness and defendants have failed to do so.  See Exhibit 4, demand letter dated June 6, 2019, sent to Rheumatic Disease Clinic of Houston and Pegram, and Exhibit 4A, the signed CM/RRR green card dated June 11, 2019.

26.   *Prayer.*  Plaintiff prays for the following relief:

   (a)   that process issue and Defendants be served as provided by law;

   (b)   that Plaintiff have Judgment against Defendants in the amount of $330,969.80, plus attorneys fees as provided in the Agreement and under Texas law, including fees in the event of appeal, plus post-judgment interest at the legal rate, and all costs of court;

   (c)   for judicial foreclosure of its lien regarding the subject collateral so as to satisfy its judgment;

   (d)   possession of the collateral for the purpose of selling and applying proceeds to the balance due, if not otherwise satisfied; and

   (e)   that the Court grant such other and further relief, at law or in equity, for which Plaintiff is justly entitled.

Respectfully submitted,

CERSONSKY, ROSEN & GARCÍA, P.C.

By: /s/ M. H. Cersonsky
   M. H. Cersonsky, TBN:  04048500
   Email: mhcersonsky@law-crg.com
   1770 St. James Place, Suite 150
   Houston, Texas 77056
   Telephone: (713) 600-8500
   Fax: (713) 600-8585
   Attorneys for Plaintiff Can Capital Asset Servicing,
   Inc. f/k/a NewLogic Business Loans, Inc.

Agreement #

Account ID:

# Business Loan Agreement

This Business Loan Agreement (this "Agreement") dated __January 25th, 2016__ is between **WebBank** ("Lender") and the borrower listed below ("Borrower").

### A. Borrower Information

| BUSINESS LEGAL NAME | D/B/A | FEDERAL TAX ID# |
|---|---|---|
| Samuel B Pegram MD PA | Rheumatic Disease Clinic of Hou | |

| BUSINESS ADDRESS  CITY | STATE  ZIP | STATE OF INCORPORATION / ORGANIZATION |
|---|---|---|
| 4825 Almeda Rd  Houston | TX  77004 | |

| BUSINESS START DAY (MM/YY) | BUSINESS ENTITY CHECK ONE | |
|---|---|---|
| 01/11 | Corporation ☒  Limited partnership ☐ | Limited liability company ☐  Partnership ☐  Limited liability partnership ☐  Sole Proprietorship ☐ |

If applicable, other business locations listed on page 2.

### B. Owner Information

| NAME | TITLE | DATE OF BIRTH | SOCIAL SECURITY # |
|---|---|---|---|
| Samuel B      Pegram | President | | |

| RESIDENTIAL ADDRESS  CITY  STATE  ZIP | | | |
|---|---|---|---|
| 3004 Meadowmist Ct      Pearland | TX | 77584 | |

### C. Payment Information

| Principal Amount | $ 400,000.00 |
|---|---|
| Repayment Amount | $ 645,404.00 |

**WEEKDAY PAYMENT AMOUNT**  814.90

Note: Your weekday payment amount of $ 814.90 will begin to be debited from your Designated Account on the day the Principal Amount is transferred to you.

MATURITY DATE  1110  Days after the Effective Date

### D. Designated Account

| BANK NAME ("BANK") | BANK ADDRESS:  CITY | STATE | ZIP |
|---|---|---|---|
| | | | |

| ACCOUNT NUMBER | ROUTING NUMBER |
|---|---|
| | |

### E. Key Terms & Conditions

You should read this entire Agreement before signing it, but we want you to be aware of the following terms and conditions: (1) Section 18 gives you and us the right to require any dispute to be resolved through BINDING INDIVIDUAL ARBITRATION rather than in court. Individual arbitration means that neither you nor we can assert claims on behalf of a class or in a representative capacity. You can opt out of this provision without penalty for a limited time. (2) Section 5.4 requires you to pay certain fees and charges in addition to the Repayment Amount. These fees and charges include, but are not limited to, an Origination Fee equal to  0  % of the Principal Amount, an Administrative Fee of $  0  , late fees, dishonored payment fees and site visit fees. (3) Among other things, Section 10.11 allows us to pull your credit reports in connection with this loan and to determine your eligibility for other financial products. (4) Among other things, Section 20 restricts what you can do with our collateral for this loan. (5) Section 21 restricts your ability to seek certain types of additional financing before you have paid off your obligations to us. (6) Section 22 allows us to contact you in certain ways and to record our telephone calls with you. Parts of Section 22 are optional. PLEASE READ THESE PROVISIONS CAREFULLY.

**EXHIBIT**

1

Business Loan Agreement | Revised October, 2013 | Page 1 of 11

## F. Contact Information

| EMAIL ADDRESS | PHONE NUMBER |
|---|---|
|  |  |

## G. Other Business Locations

| STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| STREET ADDRESS | CITY | STATE | ZIP |
| STREET ADDRESS | CITY | STATE | ZIP |
| STREET ADDRESS | CITY | STATE | ZIP |

## H. Optional Information

| WEBSITE | FAX |
|---|---|
|  |  |

**1. Parties.** In this Agreement, the words "you" and "your" refer to Borrower. The words "we", "us" and "our" refer to Lender and its successors or assigns, including any "Assignee" as defined in Section 11. "Principal" refers to each one of Borrower's owners, shareholders, partners, members, principals, officers, directors and employees. "Signing Principal" refers to each Principal that has executed this Agreement or a Personal Guaranty of this Agreement.

**2. Effective Date; Term.** The term of this Agreement (the "Term") begins on the date we accept it at our home office in Utah by signing it or sending you the Principal Amount, whichever is earlier (the "Effective Date"). We may accept this Agreement without signing it by sending you the Principal Amount. You understand and agree that we are not required to send you the Principal Amount until: (a) you have provided us with all documents and fully met all conditions required by this Agreement; and (b) the security interests we are entitled to receive under this Agreement have been perfected. If there is a delay in your receipt of the Principal Amount for these or any other reasons, you agree that there will be no adverse consequence to you or us. The Term ends on the Maturity Date set forth above, unless we elect to extend the Term to collect unpaid fees and other charges under Section 5.4 below, in which case the Term shall end when we have collected the Repayment Amount and all other amounts due under this Agreement. In addition, if you pay us the Repayment Amount and all other amounts due under this Agreement prior to the Maturity Date, and you have done everything else you are required to do under this Agreement, the Term will end and you will have no further obligations to us under this Agreement except as otherwise stated below.

**3. Principal Amount; Use of Loan Proceeds.** You represent to us and agree that the Principal Amount will be used only: (a) to buy merchandise, inventory or related goods you will rent or sell to your customers, (b) to buy equipment or other goods for use in your business, (c) for training or other services needed by your business, and/or (d) to make improvements to your business location (but not to buy real estate). REGARDLESS

OF ANYTHING ELSE STATED IN THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT: (A) YOU WILL USE THE PRINCIPAL AMOUNT (AND THE GOODS OR SERVICES YOU BUY WITH THE PRINCIPAL AMOUNT) **SOLELY FOR BUSINESS PURPOSES** AND NOT FOR CONSUMER, PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (B) YOU WILL NOT USE THE PRINCIPAL AMOUNT TO FUND DIVIDENDS OR DISTRIBUTIONS TO ANY OF YOUR SHAREHOLDERS, PARTNERS, MEMBERS OR ANY OTHER OWNER OF ANY EQUITY INTEREST IN YOUR BUSINESS; AND (C) THE LOAN DOCUMENTED BY THIS AGREEMENT IS NOT A "CONSUMER TRANSACTION" AS DEFINED IN THE UNIFORM COMMERCIAL CODE ("UCC").

**4. Promise to Pay.** In exchange for us loaning you the Principal Amount, you unconditionally promise to pay us the Repayment Amount and all other amounts this Agreement requires you to pay. You agree to make payments to us in the manner stated in Section 5 of this Agreement. As part of your agreement to repay us without conditions, you waive (both as to the original loan and any renewal, extension, refinancing, modification or consolidation of the loan): (a) protest, demand and presentment: (b) notice of dishonor, protest or suit; (c) all other notices or requirements necessary to hold you liable hereunder; and (d) all rights of exemption under the constitution or laws of any state as to real or personal property. **YOU AGREE THAT YOUR OBLIGATIONS UNDER THIS AGREEMENT ARE ABSOLUTE AND UNCONDITIONAL, MAY NOT BE PREPAID EXCEPT AS SPECIFICALLY STATED HEREIN, AND SHALL CONTINUE IN FULL FORCE AND EFFECT REGARDLESS OF ANY CIRCUMSTANCE WHATSOEVER, AND THAT SUCH OBLIGATIONS SHALL NOT BE AFFECTED BY ANY COUNTERCLAIM, SET-OFF, RECOUPMENT, OFFSET, DEFENSE OR OTHER ALLEGED RIGHT AGAINST US.**

## 5. Method of Repayment.

5.1 *Payment through Weekday ACH Debits*. Except as set forth in Section 5.2, you shall pay us the Weekday Payment Amount (set forth on page 1, under Section C, "Payment Information") on every Monday through Friday, inclusive (each a "Weekday"), by authorizing and allowing Lender and/or Operator (defined below) to debit or otherwise withdraw the Weekday Payment Amount from the Designated Account on each Weekday. Borrower hereby authorizes and requests Lender and/or each Operator to debit or otherwise withdraw the Weekday Payment Amounts from the Designated Account on each Weekday until we have received the entire Repayment Amount and all amounts due and/or owed under this Agreement, including without limitation each Weekday Payment Amount and all late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due pursuant to this Agreement. Borrower further: (a) authorizes Lender and each Operator to deliver a copy of this Agreement to the Bank as evidence of Borrower's authorization, and (b) agrees that, except to the extent prohibited by applicable law, Borrower's authorizations to Lender and each Operator hereunder may be revoked only with Lender's prior written consent. For purposes of this Agreement, the term "Operator" shall mean any person or entity we designate to debit or otherwise withdraw (via the Automated Clearing House ("ACH") system, electronic checks, wires, or otherwise) any amounts from your accounts as authorized or permitted by this Agreement.

5.2 *Bank Holidays and Other Exceptions*. Lender and/or Operator will debit the Designated Account for Weekday Payment Amounts only on Weekdays on which the Bank is open and able to process ACH transactions. On the Weekday immediately following any Weekday or Weekdays on which the Bank was not open or was not able to process ACH transactions for reasons other than an insufficient Designated Account balance, Lender or Operator will debit the Designated Account for an amount equal to the sum of: (i) the Weekday Payment Amount due on that Weekday, plus (ii) the Weekday Payment Amount(s) due on the preceding Weekday(s) when the Bank was not open or could not process ACH transactions.

5.3 *Authorization to Access and Withdraw from Designated Account*. You authorize and request Lender and/or Operator to debit or otherwise withdraw (via the ACH system, electronic checks, wires or otherwise) the Weekday Payment Amounts from the Designated Account each Weekday until we have received the entire Repayment Amount and all other amounts you owe to us under this Agreement. You agree that, except to the extent prohibited by applicable law, you will not revoke this authorization and instruction without our prior written consent. You acknowledge and agree that we and Operator may issue pre-notifications to your Bank with respect to such debits, withdrawals and other transactions. You agree that Operator may rely upon our instructions, without any independent verification, in making the transactions described above. You waive any claim for damages you may have against Operator in connection with actions taken based on our instructions, unless such damages were due to Operator's failure to follow our instructions. You acknowledge and agree that (a) Operator will be acting on our behalf with respect to the Designated Account, (b) Operator may or may not be our affiliate, and (c) we are not responsible and shall not be liable for, and you agree to hold us harmless for, the actions of Operator. You understand and agree that this Agreement allows us to access the Designated Account. Within two business days of any request by us, you shall provide, or cause Operator or

the Bank to provide, us with records and/or other information regarding the Designated Account. You hereby authorize and direct the Bank to provide us with all such information.

5.4 *Fees*. In addition to the Repayment Amount, you agree to pay us the following fees and charges: (a) a one-time, non-refundable Origination Fee in the amount set forth in the Key Terms and Conditions on the first page of this Agreement; (b) a one-time, non-refundable Administrative Fee in the amount set forth in the Key Terms and Conditions on the first page of this Agreement; (c) a fee of $25 (or such lesser amount as permitted by applicable law) for each returned, rejected or dishonored payment, ACH debit, or wire transfer withdrawal, it being understood that we have the right to receive such fee for each business day on which we or our designee attempted and were unable to debit or otherwise withdraw from your accounts the amount we were entitled to receive as of such date; (d) the cost of any site visit that confirms a violation of this Agreement, not to exceed $500 for each such visit; (e) if we have not received from you all Weekday Payment Amounts as of the last day of each month, a late fee equal to 5% of the sum of all Weekday Payment Amounts due but unpaid as of that day (we may assess this late fee once each month until you have paid all of your obligations to us in full); and (f) charges for providing copies and other documentation you request from us (a list of such charges will be made available upon request or online). Borrower hereby authorizes and requests Lender and/or each Operator to withdraw the Origination Fee and Administrative Fee from the Designated Account on or after the Effective Date. **If any fees, charges or other amounts owed under this Agreement are due and unpaid on the Maturity Date, we may elect to extend the Term (without notice to you) and continue to withdraw the Weekday Payment Amount from the Designated Account each Weekday until all amounts due to us under this Agreement have been paid in full.**

5.5 *Designated Account*. You represent, warrant and agree that the Designated Account identified on Page 1 of this Agreement (under Section D, "Designated Account") (i) is and shall be a business bank account during the Term of this Agreement, (ii) is not and will not be during the Term of this Agreement an account established primarily for personal, family or household purposes or otherwise an "account" as defined in 15 U.S.C. 1693a and Regulation E, and (iii) shall have sufficient funds during the Term of this Agreement for all debits and other withdrawals contemplated by this Agreement to be made on our behalf. If the Designated Account at any time lacks sufficient funds for any debit or other withdrawal required by this Agreement to be made on our behalf, you agree to immediately transfer sufficient funds to the Designated Account or pay to us such funds.

## 6. No Discount for Prepayment.

You are required to pay all amounts owed to us under this Agreement in full, even if you pay some or all of those amounts before they are due. NO PAYMENTS YOU MAKE TO US WILL RESULT IN A DISCOUNTED PAYOFF OF YOUR OBLIGATIONS UNDER THIS AGREEMENT.

## 7. Default; Remedies.

7.1 *Events of Default*. Each of the following shall constitute an "Event of Default" under this Agreement: (a) Lender or Operator is unable to debit the Weekday Payment Amount from the Designated Account (for rejects, non-sufficient funds or otherwise) for five consecutive Weekdays on which the Bank is open; (b) you fail to pay any amount you owe us under this Agreement (other than Weekday Payment

DocuSign Envelope ID: EC22A262... D4384BBE5... 36496647261

Amounts) within 30 days after we request in writing that you do so; (c) you revoke or cancel any authorization for Lender or Operator to debit or otherwise withdraw from or access the Designated Account (but only to the extent that the prohibition on your revoking or canceling such authorization contained in this Agreement is not prohibited by applicable law); (d) you fail to maintain insurance required hereunder; (e) any warranty, representation or statement made or furnished to us by you or any Signing Principal or on your or any Signing Principal's behalf under this Agreement is or becomes false or misleading in any material respect; (f) this Agreement ceases to be in full force and effect at any time and for any reason (including failure to create a validly perfected security interest or Lien); (g) you: (i) legally dissolve, are adjudicated insolvent or bankrupt or cease to pay your debts as they mature, (ii) make a general assignment for the benefit of or enter into an arrangement with creditors, (iii) apply for or consent to the appointment of a receiver, trustee or liquidator of you or a substantial part of your property, (iv) take action to dissolve or terminate your legal existence, or authorize or file a voluntary petition in bankruptcy or under any similar law, consent to such a petition, or suffer such a petition or proceeding to be instituted against you which remains undismissed for a period of 60 days; or (v) if an individual, die or become legally incompetent; (h) commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any of your creditors or by any governmental agency against any Collateral (as defined in Section 9), including a garnishment of any of your accounts or deposit accounts; (i) you fail to perform or comply with any other term, provision, condition, covenant or agreement contained in this Agreement or any other documentation related to this Agreement; (j) you default under any other agreement with us, any Assignee or any affiliate of either us or any Assignee, or under any agreement with any third party material to your business or providing for the lease of real or personal property or the repayment of money borrowed; (k) we reasonably deem ourselves insecure with respect to your performance hereunder or in our rights with respect to the Collateral; and (l) any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of your obligations hereunder.

7.2 *Remedies.* Upon the occurrence of an Event of Default, we shall have the right, but not the obligation, to declare the unpaid balance of the Repayment Amount and all other amounts you owe us under this Agreement to be immediately due and payable. We shall have and may exercise all the rights and remedies of a secured creditor under the UCC. In addition, we shall have and may exercise any and all other rights and remedies available to us at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of our rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by us to pursue any remedy will not constitute a waiver of our rights to pursue other remedies. No forbearance or delay by us shall be deemed to waive any of our rights or remedies or create a course of dealing between or among the parties hereto. Any election by us to make expenditures or to take action to perform one or more of your obligations under this Agreement, after your failure to perform, shall not affect our right to declare an Event of Default and exercise our remedies.

## 8. Additional Repayment Terms.

8.1 *Other Payment Methods.* You may make payments to us in addition to Weekday Payment Amounts to satisfy your obligations under this Agreement. All such payments must be made in immediately available funds and U.S. Dollars paid by check, money order, wire transfer, ACH credit or any pay-by-phone or on-line service that we offer. Any payments sent by mail or overnight courier must be addressed to WebBank, c/o CAN Capital Asset Servicing, Inc. at the address set forth in Section 14, Attn: Other Payments Personnel. You acknowledge and agree that payments sent to any other address may not be timely processed or credited. Any payments made under this Section shall not affect in any way your obligation to pay Weekday Payment Amounts. We may accept late, postdated or partial payments without losing any of our rights under this Agreement or otherwise. We have no obligation to hold postdated checks and may process any postdated check on the date we receive it without being liable to you for any damages or other claims you may assert, which you hereby expressly waive. You agree not to mark any partial payment "paid in full," "without recourse," "in full satisfaction" or with any similar language, and you agree that any such notations shall have no force or effect and that we will not lose any of our rights under this Agreement if we accept any such payments.

8.2 *Application of Payments.* Weekday Payment Amounts will be applied first to any Weekday Payment Amounts due, and then in the same manner as a payment other than a Weekday Payment Amount. If you make a payment other than a Weekday Payment Amount, we generally will apply payments first to any items we have asked you to pay, then to any other fees you owe us, then to other amounts you owe us (such as for amounts we incur in performing your obligations pursuant to Section 12), and then to the balance of the Repayment Amount. However, we reserve the right to apply payments in any order or manner we choose, in our sole discretion.

8.3 *Excess Cash.* If we receive cash under this Agreement that exceeds the Repayment Amount and any other amounts we are entitled to receive (such excess being called the "Excess Cash") by at least $20.00, we agree to pay such Excess Cash to you within thirty (30) days after we received it. In the event the Excess Cash is less than $20.00, we agree to pay such Excess Cash to you within thirty (30) days after we receive a written request from you, provided that you make the request within six months of our receipt of such Excess Cash. If you do not request the return of less than $20.00 in Excess Cash within this time period, it will be deemed earned by us. You acknowledge and agree that we have no obligation to return to you or attempt to recover from Operator or any other third party any funds that we have not received which would become Excess Cash upon our receipt of such funds.

8.4 *Reliance on Terms.* The provisions of this Agreement are for the benefit of you, each Signing Principal, us, and Operator. Notwithstanding the fact that Operator is not a party to this Agreement, Operator may rely upon the terms of this Agreement and raise them as defenses in any action by you or any Signing Principal.

8.5 *Indemnification; Limitation of Liability.* You shall indemnify and hold each of us, Operator, its and our respective officers, directors, affiliates, employees, agents, representatives, successors and assigns (the "Indemnified Parties") harmless from and against all losses, damages, claims, liabilities, obligations, penalties, suits, actions, controversies, or

DocuSign Envelope ID: EC23A262... 0-4384-BBED-35496647261

proceedings of any kind, imposed upon, incurred by, or asserted against any of the Indemnified Parties, in any way arising from, in connection with, relating to, or incident to your breach of this Agreement or any and all actions taken by Operator in reliance upon information or instructions provided to Operator by us, including the payment of all costs and expenses of every kind for the enforcement of our rights and remedies hereunder, including reasonable attorneys' fees, costs of any trial, arbitration, appellate court proceeding, administrative proceeding, or any negotiations or consultations (the "Indemnified Amounts"). Such Indemnified Amounts will bear interest at the rate for prejudgment interest prevailing in your jurisdiction until paid. IN NO EVENT WILL WE OR ANY OPERATOR BE LIABLE FOR ANY CLAIMS ASSERTED BY YOU UNDER ANY THEORY OF LAW, INCLUDING ANY TORT OR CONTRACT THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH YOU HEREBY EXPRESSLY WAIVE.

**9. Grant of Security Interest.** Capitalized terms used in this Section without definition which are not defined elsewhere in this Agreement have the meanings defined in the UCC. For valuable consideration and to secure the prompt payment and performance in full of all of your, any Principal's or any of your affiliates' indebtedness, liabilities and obligations to us, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising, whether or not such indebtedness, liabilities and obligations relate to the loan described in this Agreement and whether or not contemplated by the parties hereto at the time of the granting of this security interest, regardless of how they arise or by what agreement or instrument they may be evidenced or whether evidenced by any agreement or instrument and including obligations to perform acts and refrain from taking action as well as obligations to pay money, including all principal, interest, other fees and expenses, you hereby grant to us a security interest in the following properties, assets and rights (the "Collateral"), wherever located, whether now owned or hereafter acquired or arising and howsoever your interest therein may arise or appear (whether by ownership, lease, security interest, claim, or otherwise): (a) any and all amounts owing to you now or in the future from any merchant processor; (b) all Accounts; (c) all Chattel Paper (including Tangible Chattel Paper and Electronic Chattel Paper); (d) all Instruments; (e) all Goods, including, without limitation, Equipment, motor vehicles, Inventory, Farm Products, Accessions, and As Extracted Collateral; (f) all Documents; (g) all General Intangibles (including, without limitation, Payment Intangibles and software); (h) all Deposit Accounts; (i) all Letter of Credit Rights; (j) all Investment Property; (k) all Supporting Obligations; (l) all trademarks, trade names, service marks, logos and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and all renewals, reissues and extensions thereof (collectively "IP"); (m) any records and data relating to any of the foregoing, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of your right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and (n) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the

foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process. You irrevocably authorize us and our designees at any time and from time to time to file: (i) in any filing office in any jurisdiction any initial financing statements and amendments thereto that indicate the collateral therein as all of your assets or words of similar effect, regardless of whether such description is greater in scope than the collateral pledged to us hereunder; and (ii) such recordations with the USPTO we deem necessary or desirable to evidence the security interest in IP described above.

**10. Representations, Warranties and Covenants.** You and each Signing Principal represent, warrant and covenant the following as of the Effective Date and during the Term of this Agreement:

    10.1 *Your Business and Operations.* You shall: (a) not materially change the nature of your business from the type originally disclosed to us in connection with this Agreement; and (b) not sell or otherwise transfer your business without: (i) our express prior written consent and (ii) the assumption by transferee of all of your obligations under this Agreement using documentation reasonably satisfactory to us.

    10.2 *Name, Location, Authority, Etc.* (a) You are and shall remain duly organized, licensed, validly existing and in good standing under the laws of your state or jurisdiction of organization and are and shall remain duly qualified, licensed and in good standing in each and every other state and jurisdiction in which the failure to do so could have a material adverse effect on your financial condition, business or operations; (b) your exact legal name set forth on page 1, under Section A, "Borrower Information", is true and correct and you do not and shall not conduct your business under any other name; (c) you shall not change your place of business, your legal name, entity type or state or jurisdiction of organization, unless you have provided us with at least 60 days' prior written notice and you, at your sole cost and expense, provide such documents, agreements and information we request and take such other actions as we deem necessary or desirable to protect our interests hereunder and in the Collateral; (d) you are authorized and permitted, by law, your organizational documents, contracts to which you or any Signing Principal is a party and otherwise, to execute, deliver and perform this Agreement and all related documents; (e) all of your organizational and formation documents and all amendments thereto have been duly filed and are in proper order and any capital stock, membership interests or other ownership interest issued by you and outstanding was and is properly issued and all of your books and records are accurate and up to date and will be so maintained; (f) you are subject to no charter, corporate or other legal restriction, or any judgment, award, decree, order, governmental rule or regulation or contractual restriction that could have a material adverse effect on your financial condition, business or prospects; (g) you are and will continue to be in compliance with your organizational and formation documents, all contractual requirements by which you may be bound, and all applicable federal, state and local laws, statutes, regulations, ordinances and rules pertaining to the conduct of your business, including without limitation the regulations of card associations and payment networks; (h) there is no action, suit, proceeding or investigation pending or, to your knowledge, threatened against or affecting you or any of your assets before or by any court or other governmental authority which, if determined adversely to you, would have a

proceedings of any kind, imposed upon, incurred by, or asserted against any of the Indemnified Parties, in any way arising from, in connection with, relating to, or incident to your breach of this Agreement or any and all actions taken by Operator in reliance upon information or instructions provided to Operator by us, including the payment of all costs and expenses of every kind for the enforcement of our rights and remedies hereunder, including reasonable attorneys' fees, costs of any trial, arbitration, appellate court proceeding, administrative proceeding, or any negotiations or consultations (the "Indemnified Amounts"). Such Indemnified Amounts will bear interest at the rate for prejudgment interest prevailing in your jurisdiction until paid.  IN NO EVENT WILL WE OR ANY OPERATOR BE LIABLE FOR ANY CLAIMS ASSERTED BY YOU UNDER ANY THEORY OF LAW, INCLUDING ANY TORT OR CONTRACT THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH YOU HEREBY EXPRESSLY WAIVE.

**9. Grant of Security Interest.** Capitalized terms used in this Section without definition which are not defined elsewhere in this Agreement have the meanings defined in the UCC. For valuable consideration and to secure the prompt payment and performance in full of all of your, any Principal's or any of your affiliates' indebtedness, liabilities and obligations to us, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising, whether or not such indebtedness, liabilities and obligations relate to the loan described in this Agreement and whether or not contemplated by the parties hereto at the time of the granting of this security interest, regardless of how they arise or by what agreement or instrument they may be evidenced or whether evidenced by any agreement or instrument and including obligations to perform acts and refrain from taking action as well as obligations to pay money, including all principal, interest, other fees and expenses, you hereby grant to us a security interest in the following properties, assets and rights (the "Collateral"), wherever located, whether now owned or hereafter acquired or arising and howsoever your interest therein may arise or appear (whether by ownership, lease, security interest, claim, or otherwise): (a) any and all amounts owing to you now or in the future from any merchant processor; (b) all Accounts; (c) all Chattel Paper (including Tangible Chattel Paper and Electronic Chattel Paper); (d) all Instruments; (e) all Goods, including, without limitation, Equipment, motor vehicles, Inventory, Farm Products, Accessions, and As Extracted Collateral; (f) all Documents; (g) all General Intangibles (including, without limitation, Payment Intangibles and software); (h) all Deposit Accounts; (i) all Letter of Credit Rights; (j) all Investment Property; (k) all Supporting Obligations; (l) all trademarks, trade names, service marks, logos and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and all renewals, reissues and extensions thereof (collectively "IP"); (m) any records and data relating to any of the foregoing, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of your right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and (n) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the

foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process. You irrevocably authorize us and our designees at any time and from time to time to file: (i) in any filing office in any jurisdiction any initial financing statements and amendments thereto that indicate the collateral therein as all of your assets or words of similar effect, regardless of whether such description is greater in scope than the collateral pledged to us hereunder; and (ii) such recordations with the USPTO we deem necessary or desirable to evidence the security interest in IP described above.

**10. Representations, Warranties and Covenants.** You and each Signing Principal represent, warrant and covenant the following as of the Effective Date and during the Term of this Agreement:

**10.1** *Your Business and Operations.* You shall: (a) not materially change the nature of your business from the type originally disclosed to us in connection with this Agreement; and (b) not sell or otherwise transfer your business without: (i) our express prior written consent and (ii) the assumption by transferee of all of your obligations under this Agreement using documentation reasonably satisfactory to us.

**10.2** *Name, Location, Authority, Etc.* (a) You are and shall remain duly organized, licensed, validly existing and in good standing under the laws of your state or jurisdiction of organization and are and shall remain duly qualified, licensed and in good standing in each and every other state and jurisdiction in which the failure to do so could have a material adverse effect on your financial condition, business or operations; (b) your exact legal name set forth on page 1, under Section A, "Borrower Information", is true and correct and you do not and shall not conduct your business under any other name; (c) you shall not change your place of business, your legal name, entity type or state or jurisdiction of organization, unless you have provided us with at least 60 days' prior written notice and you, at your sole cost and expense, provide such documents, agreements and information we request and take such other actions as we deem necessary or desirable to protect our interests hereunder and in the Collateral; (d) you are authorized and permitted, by law, your organizational documents, contracts to which you or any Signing Principal is a party and otherwise, to execute, deliver and perform this Agreement and all related documents; (e) all of your organizational and formation documents and all amendments thereto have been duly filed and are in proper order and any capital stock, membership interests or other ownership interest issued by you and outstanding was and is properly issued and all of your books and records are accurate and up to date and will be so maintained; (f) you are subject to no charter, corporate or other legal restriction, or any judgment, award, decree, order, governmental rule or regulation or contractual restriction that could have a material adverse effect on your financial condition, business or prospects; (g) you are and will continue to be in compliance with your organizational and formation documents, all contractual requirements by which you may be bound, and all applicable federal, state and local laws, statutes, regulations, ordinances and rules pertaining to the conduct of your business, including without limitation the regulations of card associations and payment networks; (h) there is no action, suit, proceeding or investigation pending or, to your knowledge, threatened against or affecting you or any of your assets before or by any court or other governmental authority which, if determined adversely to you, would have a

material adverse effect on your financial condition, business or prospects or the value of the Collateral; and (i) you possess and are in compliance with all permits, licenses, approvals, consents, registrations and other authorizations necessary to own, operate and/or lease your properties and to conduct your business.

10.3 *Location of the Collateral.* You agree to keep the Collateral (or, to the extent the Collateral consists of intangible property such as Accounts or General Intangibles, the records concerning the Collateral) at the location(s) shown on page 1, under Section A, "Borrower Information", or at such other locations as we have agreed to in advance in writing. Upon our request, you will deliver to us in form satisfactory to us a schedule describing the Collateral in such detail as we reasonably request. You shall not remove the Collateral from its existing location without our prior written consent.

10.4 *Repairs and Maintenance.* You shall: (a) only use Collateral in a prudent, businesslike manner for its originally-intended purpose; (b) comply promptly with all applicable insurance policies, laws, ordinances, rules, regulations and requirements of all governmental authorities, now or hereafter in effect, applicable to the ownership, production or disposition thereof; and (c) pay when due all taxes and claims for work done on, or services or material furnished in connection with, the Collateral.

10.5 *Inspection of Collateral and Place of Business.* We or our designated representatives and agents shall have the right during your normal business hours and at any other reasonable time to examine the Collateral where located and the interior and exterior of any of your places of business. During an examination of any of your places of business, we may examine, among other things, whether you (a) have a place of business that is separate from any personal residence, (b) are open for business, and (c) have sufficient inventory to conduct your business. When performing an examination, we may photograph the interior and exterior of any your places of business, including any signage, and may photograph any Principal.

10.6 *Insurance.* You shall maintain insurance in such amounts and against such risks as are consistent with past practice and shall show proof of such insurance upon our request. You shall promptly notify us of any loss or damage to the Collateral.

10.7 *Business Information; Reliance; Compliance.* All information (financial and other) provided by or on your or any Signing Principal's behalf to us in connection with or pursuant to this Agreement is true, accurate and complete in all respects. You and each Signing Principal shall furnish us and Operator such information as we may request from time to time. You acknowledge and agree that all information (financial and other) provided by or on behalf of you and/or any Signing Principal has been relied upon by us in connection with our decision to loan you the Principal Amount.

10.8 *Solvency.* You do not presently intend to close or cease operating your business, in whole or in part, temporarily or permanently. As of the date of this Agreement, you are solvent and are not contemplating any insolvency or bankruptcy proceeding. During the four months preceding the date of this Agreement, neither you nor any Principal has discussed with or among your management, with counsel, or with any other advisor or creditor, any potential insolvency, bankruptcy, receivership, or assignment for the benefit of your creditors and no such action or proceeding has been filed or is pending.

Other than as disclosed to us in a writing attached to this Agreement, no eviction or foreclosure is pending or threatened against you.

10.9 *Confidentiality.* You and each Signing Principal understand and agree that the terms and conditions of the products and services we offer, including this Agreement and any other documentation provided by us ("Confidential Information") are our proprietary and confidential information. Accordingly, unless disclosure is required by applicable law or court order, you and each Signing Principal shall not disclose (and you and each Signing Principal shall cause each Principal not to disclose) Confidential Information to any person other than your attorneys, accountants, financial advisors or employees who need to know such information for the purpose of advising you ("Advisors"), provided that such Advisors use such information solely to advise you and first agree in writing to keep such information confidential.

10.10 *Publicity.* You and each Signing Principal authorize us to use your, his or her name in a listing of clients and in advertising and marketing materials.

10.11 *Credit Reports and Information Sharing.* YOU AND EACH SIGNING PRINCIPAL HEREBY AUTHORIZE US, OUR AGENTS AND REPRESENTATIVES, AND ANY CREDIT REPORTING AGENCY ENGAGED BY ANY OF THE FOREGOING, TO (A) INVESTIGATE ANY REFERENCES GIVEN OR ANY OTHER STATEMENTS OR DATA OBTAINED FROM OR ABOUT YOU OR SIGNING PRINCIPALS FOR THE PURPOSE OF THIS AGREEMENT, AND (B) OBTAIN YOUR AND EACH SIGNING PRINCIPAL'S BUSINESS AND PERSONAL CREDIT BUREAU REPORTS FROM TIME TO TIME, (I) AT ANY TIME NOW OR FOR SO LONG AS YOU OR ANY SIGNING PRINCIPAL(S) CONTINUE TO HAVE ANY OBLIGATION TO US AS A CONSEQUENCE OF THIS AGREEMENT, OR (II) AT ANY TIME IN ORDER FOR US TO DETERMINE YOUR ELIGIBILITY FOR A FINANCIAL PRODUCT OFFERED BY US. We may report our transaction and experiences with you and/or any Signing Principal to credit bureaus and our affiliates. Our affiliates may only use such information regarding you or a Signing Principal when they are considering whether to offer financial or other products or services requested by you or the Signing Principal, respectively. You and each Signing Principal hereby waive to the maximum extent permitted by law any claim for damages against us and our affiliates, agents, employees and representatives relating to any investigation undertaken by or on your behalf as permitted by this Agreement or disclosure of information as permitted by this Agreement. You also agree that we may release any such information if we believe it is required to comply with any governmental or legal process, whether or not such release is actually required, or when it is necessary or desirable in connection with a transaction or investigating a potential loss. If you or any Signing Principal fails to satisfy the terms of your respective credit obligations hereunder, we may submit a negative credit report to a credit reporting agency that adversely effects the credit score or record of you and/or the Signing Principals.

10.12 *D/B/As.* You and each Signing Principal hereby acknowledge and agree that we may use "doing business as" or "d/b/a" names in connection with various matters relating to the transactions between you and us, including the filing of UCC-1 financing statements and other notices or filings.

10.13 *Collection Costs and Fees.* To the extent not prohibited by applicable law, you shall pay to us any and all expenses, including collection costs, attorneys' fees and expenses, expert fees and expenses, and all other expenses which may be incurred by us in the prosecution, defense, settlement and/or other resolution of any claim, demand, action or proceeding arising out of or relating to this Agreement, the Collateral or any of our related rights or interests, regardless of whether you are a party to that action or proceeding or made aware of the claim or demand before it is resolved. Without limiting the generality of the foregoing, the expenses you shall pay to us include counsel fees and expenses incurred in any bankruptcy or insolvency proceedings and all costs and expenses (including search fees) incurred or paid by us for the purpose of administering, protecting or realizing our security under this Agreement. All amounts described in this Section shall be considered advances to protect our security, and shall be secured by this Agreement.

11. **Assignment.** Without our prior written consent, you shall not: (a) pledge, cancel, revoke or assign this Agreement or your rights hereunder; (b) allow any lien to exist on any Collateral other than our rights hereunder; or (c) sell, transfer or assign any Collateral to a third party; provided, however, you may sell Collateral in arms-length transactions in your normal course of business. Any prohibited assignment shall be void. No consent to an assignment by us shall release you from your obligations hereunder. We may assign, mortgage, pledge or otherwise transfer or delegate this Agreement or any of our rights or obligations hereunder to any party (each, an "Assignee") without notifying you or obtaining your consent. Without limiting the generality of the foregoing, we may grant a security interest in any and all of our rights and interests pursuant to this Agreement, including our rights and interests in and to the Weekday Payment Amounts and the Repayment Amount, and including to parties from whom we may obtain financing (any such Assignee, a "Secured Party"), and you agree that any such Secured Party is entitled, to the extent of the applicable assignment or other agreement between us and such Secured Party, to enforce any and all of our rights, remedies and interests under this Agreement. Any Secured Party shall have all of our rights, but no liability for any of our obligations, under this Agreement, and you agree that you will not assert against any Secured Party any defense, counterclaim, set-off, recoupment, offset or other alleged right that you may have against us. Upon and following receipt of written notification by an Assignee to you, you are authorized and directed to remit any and all amounts then or thereafter payable by you under this Agreement directly to such Assignee. As between you and any such Assignee, any remittance sent to us following such receipt shall not constitute payment unless and until such payment is actually received by such Assignee.

12. **Right to Perform; Further Assurances.** If you fail to carry any insurance or render any other performance required by this Agreement, we may, at our sole option and without obligation, do so and you will reimburse us together with interest from the date of the expense to the date of reimbursement at the rate for prejudgment interest prevailing in your jurisdiction. You hereby appoint us as your true and lawful attorney and agent to, in your name, execute, file, communicate, record and deliver any documents we deem appropriate to protect our interest in this Agreement or any Collateral or the proceeds thereof. This power, being coupled with an interest, shall be irrevocable until all your obligations hereunder have been indefeasibly and fully paid and performed.

**YOU ACKNOWLEDGE THAT THE FEES WE CHARGE TO YOU FOR LATE PAYMENTS, DOCUMENTATION, ORIGINATION, ADMINISTRATION, TAX COMPLIANCE, INSURANCE OR ANY OTHER MATTER ASSOCIATED WITH THIS AGREEMENT MAY REPRESENT PROFIT TO US IN WHOLE OR IN PART AND MAY NOT BE MERELY A REIMBURSEMENT FOR ACTUAL COSTS.** You agree to execute and deliver any additional writings and take any other actions we reasonably request to evidence or effect your agreements and obligations under this Agreement.

13. **Usury Savings Clause.** It is the intention of parties hereto to comply strictly with applicable usury laws and, accordingly, in no event shall we ever be entitled to receive, collect, or apply as interest any interest, fees, charges or other payments equivalent to interest, in excess of the maximum rate of interest, which we may lawfully charge under applicable law (the "Maximum Rate"). In the event that we ever receive, collect, or apply as interest any such excess, such amount which, but for this provision, would be excessive interest, shall be applied to the reduction of the principal balance owed hereunder; and if said principal balance, and all lawful interest thereon, is paid in full, any remaining excess shall forthwith be paid to you, or other party lawfully entitled thereto. In determining whether or not the interest paid or payable, under any specific contingency, exceeds the highest rate which we may lawfully charge under applicable law, the parties hereto shall, to the maximum extent permitted under applicable law, characterize any non-principal payment as a reasonable loan charge, rather than as interest. Any provision hereof, or of any other agreement between the parties hereto, that operates to obligate or compel you to pay interest in excess of the Maximum Rate shall be construed to require payment of the Maximum Rate only. The provisions of this Section shall prevail over any other provision herein or in any other agreement between the parties hereto that is in conflict with the provisions of this Section.

14. **Notices.** Any notice or other communication required or desired to be given shall be in writing and shall be sent by certified mail, return receipt requested, by a nationally recognized express courier service (such as FedEx) or personally served, and shall be deemed to be duly given when postmarked by the United States Post Office, when deposited with a nationally recognized express courier service or when personally served. Each such notice to Borrower shall be at the mailing address (or location address for delivery by courier or personal service if the mailing address is a Post Office box) set forth on page 1, in Part A, "Borrower Information", and any such notice to Lender shall be at the following address (or to any other address as may be specified by either party by a notice given as provided herein):

WebBank
c/o CAN Capital Asset Servicing, Inc. as Servicer
155 North 400 West, Suite 315
Salt Lake City, UT 84103

Notwithstanding the foregoing, any notice, request or demand which you make pursuant to any statutory rights granted to debtors under Article 9 of the UCC shall only be effective upon receipt of a copy of said notice, request or demand by us at the address set forth above with the following caption "Attention: Manager- UCC Notice."

15. **GOVERNING LAW; JURISDICTION. THIS AGREEMENT AND ALL TRANSACTIONS IT**

CONTEMPLATES, INCLUDING ALL ISSUES CONCERNING THE VALIDITY OF THIS AGREEMENT AND ANY TRANSACTIONS IT CONTEMPLATES, THE CONSTRUCTION OF ITS TERMS, AND THE INTERPRETATION, PERFORMANCE AND ENFORCEMENT OF THE RIGHTS AND DUTIES OF US, YOU AND EACH SIGNING PRINCIPAL SHALL BE GOVERNED BY AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES THAT WOULD REQUIRE THE APPLICATION OF ANY OTHER LAW. Without limiting the generality of the foregoing, you, the Signing Principals and we agree that Utah law shall govern the entire relationship between and among all parties hereto, including without limitation, all issues or claims arising out of, relating to, in connection with, or incident to this Agreement and any transactions it contemplates, whether such claims are based in tort, contract, or arise under statute or in equity, including without limitation the law with respect to applicable statutes of limitations, laches, or similar time-based defenses. Subject to each party's right to elect arbitration under Section 18 below, you and the Signing Principals further irrevocably and unconditionally consent and submit to the jurisdiction of any state or federal court located in Utah to resolve any suit, action, controversy, or proceeding of any kind (whether in contract, tort, statute, equity or otherwise) between or among any of the parties hereto, arising out of, related to, in connection with, or incident to this Agreement or any of the transactions it contemplates. You and the Signing Principals hereby agree that any of the above-named courts shall be a convenient forum for any such suit, action, controversy, or proceeding of any kind between or among the parties hereto, arising out of, related to, in connection with, or incident to this Agreement or any of the transactions it contemplates. You and the Signing Principals waive, to the fullest extent permitted by law, (a) any objection that you or Signing Principals may now or later have to the laying of venue of any suit, action, controversy, or proceeding arising out of, relating to, in connection with, or incident to this Agreement or any of the transactions it contemplates in any of the above-named courts, (b) any objection to personal jurisdiction applying in any such court, and (c) any claim that any such suit, action, controversy or proceeding brought in any such court has been brought in an inconvenient forum. THE PARTIES ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT IS MADE AND PERFORMED IN UTAH. You and Signing Principals understand and agree that: (i) we are located in Utah; (ii) we make all credit and other decisions from our office in Utah; and (iii) the loan hereunder is made in Utah (that is, no binding contract will be formed until we receive and accept your signed agreement in Utah).

16. **Fax Signatures; Counterparts.** You and Signing Principals agree that your faxed, scanned or other electronic signatures will be considered as good as your original signature and admissible in court as conclusive evidence. This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement.

17. **Interpretation; Miscellaneous.** This Agreement shall only be valid when accepted by us at our home office in Utah. Except as otherwise stated in Section 18, the provisions of this Agreement shall be severable and if any provision shall be invalid, void or unenforceable in whole or in part for any

reason, the remaining provisions shall remain in full force and effect. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns (subject nevertheless to restrictions provided in Section 11). This Agreement, together with the other agreements and instruments mentioned herein or executed by you contemporaneously herewith, constitutes the entire agreement of the parties hereto and we shall not be charged with any agreement or representation not contained in a writing executed by us as provided herein. Absent manifest error, our records shall be conclusive evidence with respect to the matters governed by this Agreement (including the total amount of Weekday Payment Amounts and other amounts paid to us) but the failure to record any such amount in such records or otherwise shall not limit or affect your obligations or our rights hereunder. Whenever terms such as "include" or "including" are used herein, they shall mean "include" or "including," as the case may be, without limiting the generality of any description or word preceding such term. Whenever terms such as "acceptable to us" or "to our satisfaction" are used or we are granted the contractual right to choose between alternatives or express our opinion, the satisfaction, choices and opinions are to be made in our sole and absolute discretion. The captions or headings herein are made for convenience and general reference only and shall not be construed to describe, define or limit the scope or intent of the provisions of such document. As used herein, all masculine pronouns shall include the feminine or neuter, and all singular terms the plural forms thereof, and vice versa. Any exhibits annexed hereto are incorporated therein and made a part thereof as if contained in the body of this Agreement. All references to Sections shall be deemed to refer to Sections of this Agreement, unless otherwise expressly provided, whether or not "hereof," "above," "below" or like words are used. This Agreement has been drafted by our counsel as a convenience to the parties hereto only and shall not, by reason of such action, be construed against us or any other party.

18. **Arbitration Agreement.** You or we each may elect to resolve any and all claims and disputes relating in any way to this Agreement or our dealings with one another ("Claims"), except for Claims concerning the validity, scope or enforceability of this Arbitration Agreement, through **BINDING INDIVIDUAL ARBITRATION.** This Arbitration Agreement is made with respect to transactions involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and not by state law. **SIGNING PRINCIPALS AGREE THAT SECTION 18 (INCLUDING SECTIONS 18.1 – 18.6) SHALL APPLY TO THEM IN THE SAME MANNER AS BORROWER.**

18.1 *Individual Arbitration*. If either of us elects to resolve a dispute by arbitration, this means that neither you nor we will be able to have the dispute settled by a court or jury trial or to participate in a class action or class arbitration. Other rights that you and we would have if you or we went to court will not be available or will be more limited in arbitration, including your and our right to appeal. YOU AND WE BOTH UNDERSTAND AND AGREE THAT BY ALLOWING EACH OTHER TO ELECT TO RESOLVE ANY DISPUTE THROUGH INDIVIDUAL ARBITRATION, **WE ARE EACH WAIVING THE RIGHT TO A JURY TRIAL OR A TRIAL BEFORE A JUDGE IN A PUBLIC COURT.** IF EITHER YOU OR WE ELECT TO RESOLVE A DISPUTE BY ARBITRATION, THAT DISPUTE SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. **NEITHER**

YOU NOR WE MAY BRING A CLAIM UNDER THIS PROVISION AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE CAPACITY. THE ARBITRATOR(S) MAY NOT CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS (except Claims by or against you and Principals with respect to a single Agreement or series of Agreements involving the same parties) AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING.

18.2 *Arbitration Rules*. Arbitration of any dispute under this Arbitration Agreement shall be administered by the American Arbitration Association ("AAA") pursuant to the applicable rules of AAA in effect at the time the arbitration is initiated. You may contact AAA to obtain information about arbitration, arbitration procedures and fees by calling 800-778-7879 or visiting www.adr.org. If AAA is unable or unwilling to administer the arbitration of a dispute, then a dispute may be referred to any other arbitration organization mutually agreed upon in writing by you and us or to an arbitration organization or arbitrator appointed pursuant to section 5 of the FAA. Arbitrations between you and us shall be conducted before a single arbitrator who shall be a retired judge or an attorney with at least 15 years of active practice. The arbitration shall take place in the federal judicial district in which your physical address is located, unless otherwise agreed by you and us in writing. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall be authorized to award any relief that would have been available in court, provided that the arbitrator's authority to resolve claims and make awards is limited to you and us alone except as otherwise specifically stated herein. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. The decision by the arbitrator shall be final and binding. You and we agree that this Arbitration Agreement extends to any other parties involved in any Claims, including but not limited to your Principals and our employees, affiliated companies and vendors. In the event of any conflict between this Arbitration Agreement and the AAA arbitration rules or the rules of any other arbitration organization or arbitrator, this Arbitration Agreement shall govern.

18.3 *Arbitration Fees and Costs*. If we initiate a dispute and either of us elects to arbitrate that dispute, or if you initiate a dispute and elect to arbitrate that dispute at the time you initiate it, we will be responsible for paying all of the arbitration fees. If you initiate a dispute, but do not elect to arbitrate it, and we elect to arbitrate that dispute, you will be responsible for paying your share of the arbitration fees up to the amount of any filing fees you would have incurred if you had brought a claim in the state or federal court closest to your physical address set forth above, and we will pay the remainder of the fees.

18.4 *Exceptions*. Notwithstanding any other provision of this Agreement, you or we may seek relief in a small claims court for Claims within the jurisdiction of that court. In addition, you and we agree that this Arbitration Agreement does not stop you or us from exercising any lawful rights to seek provisional remedies or self-help. You and we agree that we each may seek provisional remedies in court or self-help remedies out of court without waiving the right to arbitrate. Notwithstanding any other provision of this Agreement, if the foregoing prohibition against consolidated, class and/or representative arbitration is determined to be invalid or unenforceable, then this entire

Arbitration Agreement shall not apply. If any portion of this Arbitration Agreement other than the prohibition on consolidated, class and representative arbitration is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Agreement.

18.5 *Arbitration Agreement Is Optional*. YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this agreement to arbitrate, you must notify us in writing within sixty (60) days after the Effective Date. You must send your request to: WebBank, c/o CAN Capital Asset Servicing, Inc. as Servicer, Customer Service Department, 155 North 400 West, Suite 315, Salt Lake City, UT 84103. The request must include your full name, address, account number, and the statement "I reject the Arbitration Agreement contained in my Business Loan Agreement." If you exercise your right to reject arbitration, the other terms of this Agreement shall remain in full force and effect as if you had not rejected arbitration.

18.6 *Cure Provision*. You and we intend for both of us to have the right to arbitrate disputes on an individual basis as set forth above. In the event that a court finds any reason to invalidate or refuse to enforce this Arbitration Agreement, the party aggrieved by that decision shall have the right to take unilateral action to eliminate the basis for the court's decision, such as by waiving any right or remedy it has under this Agreement or agreeing to additional fee or cost shifting. This cure right may be exercised during briefing of a motion to compel arbitration, during oral argument, or in a renewed motion to compel arbitration. If a renewed motion is filed, you and we agree that the exercise of cure rights hereunder shall constitute new facts permitting such a renewed motion.

19. **Survival**. The Personal Guaranty and the following Sections hereof shall survive the expiration or termination of this Agreement for any reason and/or the relationship between us, any bankruptcy by you or us and any transfer by us of this Agreement or our rights hereunder: 7.1, 7.2, 8.4, 8.5, 10.9, 10.10, 10.13, 11, 13, 14, 15, 16, 17, 18 (including Sections 18.1 – 18.6), 19 and 22.

20. **Transactions Involving Collateral**. You represent, warrant and agree that: (a) you shall not sell, offer to sell, or otherwise transfer or dispose of any Collateral, except for inventory sold or accounts collected in the ordinary course of your business, unless we otherwise agree in writing; (b) no one else has any interest in or claim against the Collateral that you have not disclosed to us in writing prior to the Effective Date; (c) you shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any security interests, liens, claims, charges, restrictions, conditions, options, rights, mortgages, equities, pledges and encumbrances of any kind or nature whatsoever (collectively, "Liens") other than the security interest granted to us hereunder; and (d) you have, and at all times will have, good, complete and marketable title to all Collateral, free and clear of any and all Liens or any other rights or interests that may be inconsistent with the transactions contemplated with us under this Agreement, or adverse to our interests. You shall, at your sole cost and expense, defend our rights in the Collateral against the claims and demands of all other persons. All proceeds from any unauthorized disposition of the Collateral shall be held in trust for us, shall not be commingled with any other funds and shall be immediately delivered to us; provided, however that this requirement does not constitute our consent to any such disposition.

DocuSign Envelope ID: Case 4:21-cv-00459 Document 2-3 Filed on 08/07/21 in TXSD Page 18 of 44

## 21. Prohibited Transactions

You shall not enter into any arrangement, agreement or commitment with any person or entity other than us (a) that involves the direct or indirect pledge or sale of any portion of payments by your customers with credit cards, debit cards, charge cards, bank cards and/or other payment cards ("Card Receivables"), whether in the form of a purchase of, a loan against, or the sale or purchase of credits against, Card Receivables; or (b) that requires or contemplates that you will make regular payments more frequently than monthly. You agree that financing statements we file to protect our interests in the Collateral and under this Agreement may contain a statement that you are prohibited from transferring Card Receivables or other Collateral to any person or entity other than us, granting any security interest in Card Receivables or other Collateral to any person or entity other than us, or entering into any financing arrangement requiring or contemplating regular payments more frequently than monthly, until you have fulfilled all of your obligations to us.

## 22. Monitoring, Recording and Solicitations

(a) **Authorization to Contact You By Phone.** You and each Signing Principal authorize us, and our affiliates, agents and independent contractors, to contact you and each Signing Principal at any telephone number you or any Signing Principal provide to us or from which you or any Signing Principal places a call to us, or any telephone number where we believe we may reach you or any Signing Principal, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices and calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if you or a Signing Principal incurs charges for receiving such communications.

(b) **Authorization to Contact You By Other Means.** You and each Signing Principal also agree that we and our affiliates, agents and independent contractors may use any other medium, as permitted by law and including, but not limited to, mail, e-mail and facsimile, to contact you and each Signing Principal. You and each Signing Principal expressly consent to receive notices and transact business by electronic means.

(c) **Rights To Opt-Out Or Make Changes.** You and each Signing Principal are not required to agree to Sections 22(a) or 22(b) in order to obtain the loan documented by this Agreement. If you or any Signing Principal wishes to opt out of Section 22(a) and/or 22(b), or if you or any Signing Principal wants to change how we contact you, including with respect to any telephone number that we might use, please call us at (877) 300-8282 or write to us at WebBank, c/o CAN Capital Asset Servicing, Inc. as a Servicer, Customer Service Department, 155 North 400 West, Suite 315, Salt Lake City, UT 84103.

(d) **Authorization to Record Calls.** You and each Signing Principal agree that we and our affiliates, agents and independent contractors may listen to or record telephone calls between you or any Signing Principal and our representatives without additional notice to you or any Signing Principal.

## Arbitration Notice

THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION IN SECTION 18 (INCLUDING SECTIONS 18.1 – 18.6). THE ARBITRATION AGREEMENT AFFECTS YOUR LEGAL RIGHTS. READ IT CAREFULLY BEFORE SIGNING.

## Borrower Signature

I have read this entire Agreement, including the Arbitration Agreement in Section 18 (including Sections 18.1 – 18.6), and received a copy for my records. I understand that I have the right to consult with an attorney before signing this Agreement if I choose to do so. I am able to read and understand the English language. By signing below, on behalf of Borrower and in my individual capacity as a Signing Principal, I agree to all of the terms of this Agreement, including the Arbitration Agreement and the other Key Terms and Conditions summarized in Section E on Page 1, and offer to enter into the transaction it describes.

BUSINESS LEGAL NAME (TYPE OR PRINT)

Samuel B Pegram MD PA

| AUTHORIZED SIGNATURE | AUTHORIZED SIGNATURE 2 (IF APPLICABLE) |
|---|---|
| *Samuel Pegram* | |
| NAME (TYPE OR PRINT) | NAME 2 (IF APPLICABLE, TYPE OR PRINT) |
| Samuel B Pegram | |
| TITLE (TYPE OR PRINT) | TITLE (IF APPLICABLE, TYPE OR PRINT) |
| President | |

**Personal Guaranty**

THIS GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS. READ IT CAREFULLY BEFORE SIGNING.

I hereby personally and unconditionally guaranty for the benefit of WebBank and its successors and assigns ("**Lender**") the prompt payment to Lender of all amounts owed by the Borrower referenced above ("**Borrower**") under the above Agreement. This is a guaranty of payment and performance and not a guaranty of collection. This is an absolute, unconditional, primary and continuing obligation and will remain in full force and effect until all amounts owed to Lender pursuant to the Agreement are satisfied in full. I agree to be bound by all of the terms and conditions contained in the Agreement and applicable to the Signing Principals. I further agree that Lender may extend, transfer and amend the Agreement and I agree to be bound by all such changes. I waive all defenses, legal or equitable, otherwise available to me, and I waive all notices to which I might otherwise be entitled by law, including notices of protest, presentment, transfer, demand and default. I agree Lender may proceed against me separately without first proceeding against Borrower, any collateral or any other Guarantor. This Guaranty will not be discharged or affected by my death and will bind my heirs and personal representatives. If more than one Guarantor executes this Guaranty, the Guarantors' liability hereunder shall be joint and several. I hereby authorize Lender, its agents and representatives and any credit reporting agency engaged by Lender, to (a) investigate any references given or any other statements or data obtained from or about me for purposes of this guaranty, the Agreement, and any associated documentation, and (b) pull credit reports at any time now and for so long as Borrower or I may have any obligation to Lender as a consequence of this Guaranty or the Agreement, including for Lender's collection processes and its credit evaluations, including to determine Borrower's or my eligibility to enter into the Agreement or any future agreement with Lender. I hereby expressly consent to receive notices and transact business by electronic means.

I ACKNOWLEDGE AND AGREE THAT THIS GUARANTY, THE AGREEMENT AND ALL ASSOCIATED DOCUMENTATION SHALL BE INTERPRETED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH, APPLIED WITHOUT GIVING EFFECT TO CONFLICT-OF-LAWS PRINCIPLES.

I ACKNOWLEDGE AND AGREE THAT THIS GUARANTY IS GOVERNED BY THE ARBITRATION AGREEMENT SET FORTH ABOVE IN SECTION 18 (INCLUDING SECTIONS 18.1 – 18.6). WITH RESPECT TO ANY LEGAL ACTION OR PROCEEDING OF ANY KIND ARISING OUT OF, RELATED TO, IN CONNECTION WITH OR INCIDENT TO THIS GUARANTY, THE AGREEMENT, OR ANY ASSOCIATED DOCUMENTATION, I WAIVE MY RIGHT TO A JURY AND AGREE TO ARBITRATE ANY CLAIMS ON AN INDIVIDUAL BASIS AS SET FORTH IN THE ARBITRATION AGREEMENT ABOVE.

**Guarantor Signatures**

| GUARANTOR SIGNATURE | GUARANTOR SIGNATURE 2 (IF APPLICABLE) |
|---|---|
| *Samuel Pegram* | |
| NAME (TYPE OR PRINT) | NAME 2 (IF APPLICABLE, TYPE OR PRINT) |
| Samuel B Pegram | |

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**

To help the government fight the funding of terrorism and laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means for you**: When you open an account, we will ask for your name, address, date of birth (for any natural person), and other information that will allow us to identify you and your company. We may also ask to see your driver's license or other identifying documents about you and your company.

| For Lender's Use Only |
|---|
| This Agreement has been received and accepted by the Lender in the State of Utah after being signed by Borrower and Guarantor(s). |
| RECEIVED BY (TYPE OR PRINT NAME) |
| TITLE |

# CAN CAPITAL

cancapital.com

## CONFIRMATION OF ASSIGNMENT OF LOAN

**KNOW ALL PERSONS BY THESE PRESENTS,** that WEBBANK ("Assignor"), in consideration of the Amended and Restated Business Loans Program Agreement dated as of September 4, 2015 between Assignor and CAN CAPITAL, INC., and the Amended and Restated Business Loans Sale Agreement dated September 4, 2015 between Assignor and CAN CAPITAL ASSET SERVICING, INC. ("Assignee") (together, the "Agreements"), as the Agreements may be amended from time to time, and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, has granted, bargained, sold, transferred, assigned and delivered, without recourse except as expressly set forth in the Agreements, to Assignee, all right, title and interest it holds in and to the loan account made on January 28, 2016 to **P.A. Samuel B. Pegram, M.D., P.A.** with loan number **280818** (the "Loan Account") as of February 2, 2016:

**TO HAVE AND TO HOLD** the same unto Assignee, its successors permitted assigns, forever, Assignor does hereby covenant and agree that it will from time to time, as reasonably requested by Assignee, its successors and permitted assigns, do, execute, acknowledge and deliver Assignee or its successor and permitted assigns, all further acts, transfers, conveyances, assignments, power of attorney, and additional papers and instruments, and do or cause to be done all and any other acts or things as often as may be reasonable, proper or necessary for better conveying, transferring and assigning the Loan Account conveyed, transferred and assigned, and to effectively carry out the intent hereof, and vest in Assignee such title and interest as Assignor held, free and clear of any lien created by Assignor, in and to the Loan Agreement.

**IN WITNESS WHEREOF,** Assignor, through its authorized officer, has caused this Confirmation of Assignment of Loan which has been executed below on the 25 day of July, 2019 which the undersigned Assignor hereby confirms, warrants, and represents that the Loan Agreement was granted, bargained, sold, transferred, assigned, and delivered as of the stated date of February 2, 2016 (not retroactively).

ASSIGNOR:

By: _Jon Sargent_

Name: _Jon Sargent_

Title: _VP_

**EXHIBIT**

2

# CAN CAPITAL

# Payment History

| MID | 280818 |
|---|---|
| Contract Number | 124000414 |
| Funding Date | 1/28/2016 |
| Funding Amount | $400,000.00 |
| Repayment Amount | $644,000.00 |

| Date Generated | 5/21/2019 |
|---|---|
| Daily Payment | $813.13 |
| Total Paid | $313,030.20 |
| Repayment Balance | $330,969.80 |
| Past Due Balance | $330,969.80 |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 1/29/2016 | $813.13 | $643,186.87 | $0.00 | 0.00 | |
| 2/1/2016 | $813.13 | $642,373.74 | $0.00 | 0.00 | |
| 2/2/2016 | $813.13 | $641,560.61 | $0.00 | 0.00 | |
| 2/3/2016 | $813.13 | $640,747.48 | $0.00 | 0.00 | |
| 2/4/2016 | $813.13 | $639,934.35 | $0.00 | 0.00 | |
| 2/5/2016 | $813.13 | $639,121.22 | $0.00 | 0.00 | |
| 2/8/2016 | $813.13 | $638,308.09 | $0.00 | 0.00 | |
| 2/9/2016 | $813.13 | $637,494.96 | $0.00 | 0.00 | |
| 2/10/2016 | $813.13 | $636,681.83 | $0.00 | 0.00 | |
| 2/11/2016 | $813.13 | $635,868.70 | $0.00 | 0.00 | |
| 2/12/2016 | $813.13 | $635,055.57 | $0.00 | 0.00 | |
| 2/15/2016 | $813.13 | $634,242.44 | $0.00 | 0.00 | |
| 2/16/2016 | $813.13 | $633,429.31 | $0.00 | 0.00 | |
| 2/17/2016 | $813.13 | $632,616.18 | $0.00 | 0.00 | |
| 2/18/2016 | $813.13 | $631,803.05 | $0.00 | 0.00 | |
| 2/19/2016 | $813.13 | $630,989.92 | $0.00 | 0.00 | |
| 2/22/2016 | $813.13 | $630,176.79 | $0.00 | 0.00 | |
| 2/23/2016 | $813.13 | $629,363.66 | $0.00 | 0.00 | |
| 2/24/2016 | $813.13 | $628,550.53 | $0.00 | 0.00 | |
| 2/25/2016 | $813.13 | $627,737.40 | $0.00 | 0.00 | |
| 2/26/2016 | $813.13 | $626,924.27 | $0.00 | 0.00 | |
| 2/29/2016 | $813.13 | $626,111.14 | $0.00 | 0.00 | |
| 3/1/2016 | $813.13 | $625,298.01 | $0.00 | 0.00 | |
| 3/2/2016 | $813.13 | $624,484.88 | $0.00 | 0.00 | |
| 3/3/2016 | $813.13 | $623,671.75 | $0.00 | 0.00 | |
| 3/4/2016 | $813.13 | $622,858.62 | $0.00 | 0.00 | |
| 3/7/2016 | $813.13 | $622,045.49 | $0.00 | 0.00 | |
| 3/8/2016 | $813.13 | $621,232.36 | $0.00 | 0.00 | |
| 3/9/2016 | $813.13 | $620,419.23 | $0.00 | 0.00 | |
| 3/10/2016 | $813.13 | $619,606.10 | $0.00 | 0.00 | |
| 3/11/2016 | $813.13 | $618,792.97 | $0.00 | 0.00 | |
| 3/14/2016 | $813.13 | $617,979.84 | $0.00 | 0.00 | |
| 3/15/2016 | $813.13 | $617,166.71 | $0.00 | 0.00 | |
| 3/16/2016 | $813.13 | $616,353.58 | $0.00 | 0.00 | |

EXHIBIT

3

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 3/17/2016 | $813.13 | $615,540.45 | $0.00 | 0.00 | |
| 3/18/2016 | $813.13 | $614,727.32 | $0.00 | 0.00 | |
| 3/21/2016 | $813.13 | $613,914.19 | $0.00 | 0.00 | |
| 3/22/2016 | $813.13 | $613,101.06 | $0.00 | 0.00 | |
| 3/23/2016 | $813.13 | $612,287.93 | $0.00 | 0.00 | |
| 3/24/2016 | $813.13 | $611,474.80 | $0.00 | 0.00 | |
| 3/25/2016 | $813.13 | $610,661.67 | $0.00 | 0.00 | |
| 3/28/2016 | $813.13 | $609,848.54 | $0.00 | 0.00 | |
| 3/29/2016 | $813.13 | $609,035.41 | $0.00 | 0.00 | |
| 3/30/2016 | $813.13 | $608,222.28 | $0.00 | 0.00 | |
| 3/31/2016 | $813.13 | $607,409.15 | $0.00 | 0.00 | |
| 4/1/2016 | $813.13 | $606,596.02 | $0.00 | 0.00 | |
| 4/4/2016 | $813.13 | $605,782.89 | $0.00 | 0.00 | |
| 4/5/2016 | $813.13 | $604,969.76 | $0.00 | 0.00 | |
| 4/6/2016 | $813.13 | $604,156.63 | $0.00 | 0.00 | |
| 4/7/2016 | $813.13 | $603,343.50 | $0.00 | 0.00 | |
| 4/8/2016 | $813.13 | $602,530.37 | $0.00 | 0.00 | |
| 4/11/2016 | $813.13 | $601,717.24 | $0.00 | 0.00 | |
| 4/12/2016 | $813.13 | $600,904.11 | $0.00 | 0.00 | |
| 4/13/2016 | $813.13 | $600,090.98 | $0.00 | 0.00 | |
| 4/14/2016 | $813.13 | $599,277.85 | $0.00 | 0.00 | |
| 4/15/2016 | $813.13 | $598,464.72 | $0.00 | 0.00 | |
| 4/18/2016 | $813.13 | $597,651.59 | $0.00 | 0.00 | |
| 4/19/2016 | $813.13 | $596,838.46 | $0.00 | 0.00 | |
| 4/20/2016 | $813.13 | $596,025.33 | $0.00 | 0.00 | |
| 4/21/2016 | $813.13 | $595,212.20 | $0.00 | 0.00 | |
| 4/22/2016 | $813.13 | $594,399.07 | $0.00 | 0.00 | |
| 4/25/2016 | $813.13 | $593,585.94 | $0.00 | 0.00 | |
| 4/26/2016 | $813.13 | $592,772.81 | $0.00 | 0.00 | |
| 4/27/2016 | $813.13 | $591,959.68 | $0.00 | 0.00 | |
| 4/28/2016 | $813.13 | $591,146.55 | $0.00 | 0.00 | |
| 4/29/2016 | $813.13 | $590,333.42 | $0.00 | 0.00 | |
| 5/2/2016 | $813.13 | $589,520.29 | $0.00 | 0.00 | |
| 5/3/2016 | $813.13 | $588,707.16 | $0.00 | 0.00 | |
| 5/4/2016 | $813.13 | $587,894.03 | $0.00 | 0.00 | |
| 5/5/2016 | $813.13 | $587,080.90 | $0.00 | 0.00 | |
| 5/6/2016 | $813.13 | $586,267.77 | $0.00 | 0.00 | |
| 5/9/2016 | $813.13 | $585,454.64 | $0.00 | 0.00 | |
| 5/10/2016 | $813.13 | $584,641.51 | $0.00 | 0.00 | |
| 5/11/2016 | $813.13 | $583,828.38 | $0.00 | 0.00 | |
| 5/12/2016 | $813.13 | $583,015.25 | $0.00 | 0.00 | |
| 5/13/2016 | $813.13 | $582,202.12 | $0.00 | 0.00 | |
| 5/16/2016 | $813.13 | $581,388.99 | $0.00 | 0.00 | |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 5/17/2016 | $813.13 | $580,575.86 | $0.00 | 0.00 | |
| 5/18/2016 | $813.13 | $579,762.73 | $0.00 | 0.00 | |
| 5/19/2016 | $813.13 | $578,949.60 | $0.00 | 0.00 | |
| 5/20/2016 | $813.13 | $578,136.47 | $0.00 | 0.00 | |
| 5/23/2016 | $813.13 | $577,323.34 | $0.00 | 0.00 | |
| 5/24/2016 | $813.13 | $576,510.21 | $0.00 | 0.00 | |
| 5/25/2016 | $813.13 | $575,697.08 | $0.00 | 0.00 | |
| 5/26/2016 | $813.13 | $574,883.95 | $0.00 | 0.00 | |
| 5/27/2016 | $813.13 | $574,070.82 | $0.00 | 0.00 | |
| 5/30/2016 | $813.13 | $573,257.69 | $0.00 | 0.00 | |
| 5/31/2016 | $813.13 | $572,444.56 | $0.00 | 0.00 | |
| 6/1/2016 | $813.13 | $571,631.43 | $0.00 | 0.00 | |
| 6/2/2016 | $813.13 | $570,818.30 | $0.00 | 0.00 | |
| 6/3/2016 | $813.13 | $570,005.17 | $0.00 | 0.00 | |
| 6/6/2016 | $813.13 | $569,192.04 | $0.00 | 0.00 | |
| 6/7/2016 | $813.13 | $568,378.91 | $0.00 | 0.00 | |
| 6/8/2016 | $813.13 | $567,565.78 | $0.00 | 0.00 | |
| 6/9/2016 | $813.13 | $566,752.65 | $0.00 | 0.00 | |
| 6/10/2016 | $813.13 | $565,939.52 | $0.00 | 0.00 | |
| 6/13/2016 | $813.13 | $565,126.39 | $0.00 | 0.00 | |
| 6/14/2016 | $813.13 | $564,313.26 | $0.00 | 0.00 | |
| 6/15/2016 | $813.13 | $563,500.13 | $0.00 | 0.00 | |
| 6/16/2016 | $813.13 | $562,687.00 | $0.00 | 0.00 | |
| 6/17/2016 | $813.13 | $561,873.87 | $0.00 | 0.00 | |
| 6/20/2016 | $813.13 | $561,060.74 | $0.00 | 0.00 | |
| 6/21/2016 | $813.13 | $560,247.61 | $0.00 | 0.00 | |
| 6/22/2016 | $813.13 | $559,434.48 | $0.00 | 0.00 | |
| 6/23/2016 | $813.13 | $558,621.35 | $0.00 | 0.00 | |
| 6/24/2016 | $813.13 | $557,808.22 | $0.00 | 0.00 | |
| 6/27/2016 | $813.13 | $556,995.09 | $0.00 | 0.00 | |
| 6/28/2016 | $813.13 | $556,181.96 | $0.00 | 0.00 | |
| 6/29/2016 | $813.13 | $555,368.83 | $0.00 | 0.00 | |
| 6/30/2016 | $813.13 | $554,555.70 | $0.00 | 0.00 | |
| 7/1/2016 | $813.13 | $553,742.57 | $0.00 | 0.00 | |
| 7/4/2016 | $813.13 | $552,929.44 | $0.00 | 0.00 | |
| 7/5/2016 | $813.13 | $552,116.31 | $0.00 | 0.00 | |
| 7/6/2016 | $813.13 | $551,303.18 | $0.00 | 0.00 | |
| 7/7/2016 | $813.13 | $550,490.05 | $0.00 | 0.00 | |
| 7/8/2016 | $813.13 | $549,676.92 | $0.00 | 0.00 | |
| 7/11/2016 | $813.13 | $548,863.79 | $0.00 | 0.00 | |
| 7/12/2016 | $813.13 | $548,050.66 | $0.00 | 0.00 | |
| 7/13/2016 | $813.13 | $547,237.53 | $0.00 | 0.00 | |
| 7/14/2016 | $813.13 | $546,424.40 | $0.00 | 0.00 | |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 7/15/2016 | $813.13 | $545,611.27 | $0.00 | 0.00 | |
| 7/18/2016 | $813.13 | $544,798.14 | $0.00 | 0.00 | |
| 7/19/2016 | $813.13 | $543,985.01 | $0.00 | 0.00 | |
| 7/20/2016 | $813.13 | $543,171.88 | $0.00 | 0.00 | |
| 7/21/2016 | $813.13 | $542,358.75 | $0.00 | 0.00 | |
| 7/22/2016 | $813.13 | $541,545.62 | $0.00 | 0.00 | |
| 7/25/2016 | $813.13 | $540,732.49 | $0.00 | 0.00 | |
| 7/26/2016 | $813.13 | $539,919.36 | $0.00 | 0.00 | |
| 7/27/2016 | $813.13 | $539,106.23 | $0.00 | 0.00 | |
| 7/28/2016 | $813.13 | $538,293.10 | $0.00 | 0.00 | |
| 7/29/2016 | $813.13 | $537,479.97 | $0.00 | 0.00 | |
| 8/1/2016 | $813.13 | $536,666.84 | $0.00 | 0.00 | |
| 8/2/2016 | $813.13 | $535,853.71 | $0.00 | 0.00 | |
| 8/3/2016 | $813.13 | $535,040.58 | $0.00 | 0.00 | |
| 8/4/2016 | $813.13 | $534,227.45 | $0.00 | 0.00 | |
| 8/5/2016 | $813.13 | $533,414.32 | $0.00 | 0.00 | |
| 8/8/2016 | $813.13 | $532,601.19 | $0.00 | 0.00 | |
| 8/9/2016 | $813.13 | $531,788.06 | $0.00 | 0.00 | |
| 8/10/2016 | $813.13 | $530,974.93 | $0.00 | 0.00 | |
| 8/11/2016 | $813.13 | $530,161.80 | $0.00 | 0.00 | |
| 8/12/2016 | $813.13 | $529,348.67 | $0.00 | 0.00 | |
| 8/15/2016 | $813.13 | $528,535.54 | $0.00 | 0.00 | |
| 8/16/2016 | $813.13 | $527,722.41 | $0.00 | 0.00 | |
| 8/17/2016 | $813.13 | $526,909.28 | $0.00 | 0.00 | |
| 8/18/2016 | $813.13 | $526,096.15 | $0.00 | 0.00 | |
| 8/19/2016 | $813.13 | $525,283.02 | $0.00 | 0.00 | |
| 8/22/2016 | $813.13 | $524,469.89 | $0.00 | 0.00 | |
| 8/23/2016 | $813.13 | $523,656.76 | $0.00 | 0.00 | |
| 8/24/2016 | $813.13 | $522,843.63 | $0.00 | 0.00 | |
| 8/25/2016 | $813.13 | $522,030.50 | $0.00 | 0.00 | |
| 8/26/2016 | $813.13 | $521,217.37 | $0.00 | 0.00 | |
| 8/29/2016 | $813.13 | $520,404.24 | $0.00 | 0.00 | |
| 8/30/2016 | $813.13 | $519,591.11 | $0.00 | 0.00 | |
| 8/31/2016 | $813.13 | $518,777.98 | $0.00 | 0.00 | |
| 9/1/2016 | $813.13 | $517,964.85 | $0.00 | 0.00 | |
| 9/2/2016 | $813.13 | $517,151.72 | $0.00 | 0.00 | |
| 9/5/2016 | $813.13 | $516,338.59 | $0.00 | 0.00 | |
| 9/6/2016 | $813.13 | $515,525.46 | $0.00 | 0.00 | |
| 9/7/2016 | $813.13 | $514,712.33 | $0.00 | 0.00 | |
| 9/8/2016 | $813.13 | $513,899.20 | $0.00 | 0.00 | |
| 9/9/2016 | $813.13 | $513,086.07 | $0.00 | 0.00 | |
| 9/12/2016 | $813.13 | $512,272.94 | $0.00 | 0.00 | |
| 9/13/2016 | $813.13 | $511,459.81 | $0.00 | 0.00 | |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 9/14/2016 | $813.13 | $510,646.68 | $0.00 | 0.00 | |
| 9/15/2016 | $813.13 | $509,833.55 | $0.00 | 0.00 | |
| 9/16/2016 | $813.13 | $509,020.42 | $0.00 | 0.00 | |
| 9/19/2016 | $813.13 | $508,207.29 | $0.00 | 0.00 | |
| 9/20/2016 | $813.13 | $507,394.16 | $0.00 | 0.00 | |
| 9/21/2016 | $813.13 | $506,581.03 | $0.00 | 0.00 | |
| 9/22/2016 | $813.13 | $505,767.90 | $0.00 | 0.00 | |
| 9/23/2016 | $813.13 | $504,954.77 | $0.00 | 0.00 | |
| 9/26/2016 | $813.13 | $504,141.64 | $0.00 | 0.00 | |
| 9/27/2016 | $813.13 | $503,328.51 | $0.00 | 0.00 | |
| 9/28/2016 | $813.13 | $502,515.38 | $0.00 | 0.00 | |
| 9/29/2016 | $813.13 | $501,702.25 | $0.00 | 0.00 | |
| 9/30/2016 | $813.13 | $500,889.12 | $0.00 | 0.00 | |
| 10/3/2016 | $813.13 | $500,075.99 | $0.00 | 0.00 | |
| 10/4/2016 | $813.13 | $499,262.86 | $0.00 | 0.00 | |
| 10/5/2016 | $813.13 | $498,449.73 | $0.00 | 0.00 | |
| 10/6/2016 | $813.13 | $497,636.60 | $0.00 | 0.00 | |
| 10/7/2016 | $0.00 | $497,636.60 | $813.13 | 1.00 | Reversed Payment |
| 10/10/2016 | $0.00 | $497,636.60 | $1,626.26 | 2.00 | Reversed Payment |
| 10/11/2016 | $0.00 | $497,636.60 | $2,439.39 | 3.00 | Reversed Payment |
| 10/12/2016 | $0.00 | $497,636.60 | $3,252.52 | 4.00 | Reversed Payment |
| 10/13/2016 | $0.00 | $497,636.60 | $4,065.65 | 5.00 | Reversed Payment |
| 10/14/2016 | $0.00 | $497,636.60 | $4,878.78 | 6.00 | No Payment |
| 10/17/2016 | $0.00 | $497,636.60 | $5,691.91 | 7.00 | No Payment |
| 10/18/2016 | $0.00 | $497,636.60 | $6,505.04 | 8.00 | No Payment |
| 10/19/2016 | $0.00 | $497,636.60 | $7,318.17 | 9.00 | No Payment |
| 10/20/2016 | $0.00 | $497,636.60 | $8,131.30 | 10.00 | No Payment |
| 10/21/2016 | $0.00 | $497,636.60 | $8,944.43 | 11.00 | No Payment |
| 10/24/2016 | $0.00 | $497,636.60 | $9,757.56 | 12.00 | No Payment |
| 10/25/2016 | $0.00 | $497,636.60 | $10,570.69 | 13.00 | No Payment |
| 10/26/2016 | $0.00 | $497,636.60 | $11,383.82 | 14.00 | No Payment |
| 10/27/2016 | $0.00 | $497,636.60 | $12,196.95 | 15.00 | No Payment |
| 10/28/2016 | $0.00 | $497,636.60 | $13,010.08 | 16.00 | No Payment |
| 10/31/2016 | $0.00 | $497,636.60 | $13,823.21 | 17.00 | No Payment |
| 11/1/2016 | $0.00 | $497,636.60 | $14,636.34 | 18.00 | No Payment |
| 11/2/2016 | $0.00 | $497,636.60 | $15,449.47 | 19.00 | No Payment |
| 11/3/2016 | $0.00 | $497,636.60 | $16,262.60 | 20.00 | No Payment |
| 11/4/2016 | $0.00 | $497,636.60 | $17,075.73 | 21.00 | No Payment |
| 11/7/2016 | $0.00 | $497,636.60 | $17,888.86 | 22.00 | No Payment |
| 11/8/2016 | $0.00 | $497,636.60 | $18,701.99 | 23.00 | No Payment |
| 11/9/2016 | $0.00 | $497,636.60 | $19,515.12 | 24.00 | No Payment |
| 11/10/2016 | $0.00 | $497,636.60 | $20,328.25 | 25.00 | No Payment |
| 11/11/2016 | $0.00 | $497,636.60 | $21,141.38 | 26.00 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 11/14/2016 | $8,333.34 | $489,303.26 | $13,621.17 | 16.75 | Catchup Payment |
| 11/15/2016 | $0.00 | $489,303.26 | $14,434.30 | 17.75 | No Payment |
| 11/16/2016 | $0.00 | $489,303.26 | $15,247.43 | 18.75 | No Payment |
| 11/17/2016 | $0.00 | $489,303.26 | $16,060.56 | 19.75 | No Payment |
| 11/18/2016 | $0.00 | $489,303.26 | $16,873.69 | 20.75 | No Payment |
| 11/21/2016 | $0.00 | $489,303.26 | $17,686.82 | 21.75 | No Payment |
| 11/22/2016 | $0.00 | $489,303.26 | $18,499.95 | 22.75 | No Payment |
| 11/23/2016 | $0.00 | $489,303.26 | $19,313.08 | 23.75 | No Payment |
| 11/24/2016 | $0.00 | $489,303.26 | $20,126.21 | 24.75 | No Payment |
| 11/25/2016 | $0.00 | $489,303.26 | $20,939.34 | 25.75 | No Payment |
| 11/28/2016 | $0.00 | $489,303.26 | $21,752.47 | 26.75 | No Payment |
| 11/29/2016 | $0.00 | $489,303.26 | $22,565.60 | 27.75 | No Payment |
| 11/30/2016 | $0.00 | $489,303.26 | $23,378.73 | 28.75 | No Payment |
| 12/1/2016 | $0.00 | $489,303.26 | $24,191.86 | 29.75 | No Payment |
| 12/2/2016 | $0.00 | $489,303.26 | $25,004.99 | 30.75 | No Payment |
| 12/5/2016 | $0.00 | $489,303.26 | $25,818.12 | 31.75 | No Payment |
| 12/6/2016 | $0.00 | $489,303.26 | $26,631.25 | 32.75 | No Payment |
| 12/7/2016 | $0.00 | $489,303.26 | $27,444.38 | 33.75 | No Payment |
| 12/8/2016 | $0.00 | $489,303.26 | $28,257.51 | 34.75 | No Payment |
| 12/9/2016 | $0.00 | $489,303.26 | $29,070.64 | 35.75 | No Payment |
| 12/12/2016 | $0.00 | $489,303.26 | $29,883.77 | 36.75 | No Payment |
| 12/13/2016 | $0.00 | $489,303.26 | $30,696.90 | 37.75 | No Payment |
| 12/14/2016 | $8,333.34 | $480,969.92 | $23,176.69 | 28.50 | Catchup Payment |
| 12/15/2016 | $0.00 | $480,969.92 | $23,989.82 | 29.50 | No Payment |
| 12/16/2016 | $0.00 | $480,969.92 | $24,802.95 | 30.50 | No Payment |
| 12/19/2016 | $0.00 | $480,969.92 | $25,616.08 | 31.50 | No Payment |
| 12/20/2016 | $0.00 | $480,969.92 | $26,429.21 | 32.50 | No Payment |
| 12/21/2016 | $0.00 | $480,969.92 | $27,242.34 | 33.50 | No Payment |
| 12/22/2016 | $0.00 | $480,969.92 | $28,055.47 | 34.50 | No Payment |
| 12/23/2016 | $0.00 | $480,969.92 | $28,868.60 | 35.50 | No Payment |
| 12/26/2016 | $0.00 | $480,969.92 | $29,681.73 | 36.50 | No Payment |
| 12/27/2016 | $0.00 | $480,969.92 | $30,494.86 | 37.50 | No Payment |
| 12/28/2016 | $0.00 | $480,969.92 | $31,307.99 | 38.50 | No Payment |
| 12/29/2016 | $0.00 | $480,969.92 | $32,121.12 | 39.50 | No Payment |
| 12/30/2016 | $0.00 | $480,969.92 | $32,934.25 | 40.50 | No Payment |
| 1/2/2017 | $0.00 | $480,969.92 | $33,747.38 | 41.50 | No Payment |
| 1/3/2017 | $0.00 | $480,969.92 | $34,560.51 | 42.50 | No Payment |
| 1/4/2017 | $0.00 | $480,969.92 | $35,373.64 | 43.50 | No Payment |
| 1/5/2017 | $0.00 | $480,969.92 | $36,186.77 | 44.50 | No Payment |
| 1/6/2017 | $0.00 | $480,969.92 | $36,999.90 | 45.50 | No Payment |
| 1/9/2017 | $0.00 | $480,969.92 | $37,813.03 | 46.50 | No Payment |
| 1/10/2017 | $0.00 | $480,969.92 | $38,626.16 | 47.50 | No Payment |
| 1/11/2017 | $0.00 | $480,969.92 | $39,439.29 | 48.50 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 1/12/2017 | $0.00 | $480,969.92 | $40,252.42 | 49.50 | No Payment |
| 1/13/2017 | $8,333.34 | $472,636.58 | $32,732.21 | 40.25 | Catchup Payment |
| 1/16/2017 | $0.00 | $472,636.58 | $33,545.34 | 41.25 | No Payment |
| 1/17/2017 | $0.00 | $472,636.58 | $34,358.47 | 42.25 | No Payment |
| 1/18/2017 | $0.00 | $472,636.58 | $35,171.60 | 43.25 | No Payment |
| 1/19/2017 | $0.00 | $472,636.58 | $35,984.73 | 44.25 | No Payment |
| 1/20/2017 | $0.00 | $472,636.58 | $36,797.86 | 45.25 | No Payment |
| 1/23/2017 | $0.00 | $472,636.58 | $37,610.99 | 46.25 | No Payment |
| 1/24/2017 | $0.00 | $472,636.58 | $38,424.12 | 47.25 | No Payment |
| 1/25/2017 | $0.00 | $472,636.58 | $39,237.25 | 48.25 | No Payment |
| 1/26/2017 | $0.00 | $472,636.58 | $40,050.38 | 49.25 | No Payment |
| 1/27/2017 | $0.00 | $472,636.58 | $40,863.51 | 50.25 | No Payment |
| 1/30/2017 | $0.00 | $472,636.58 | $41,676.64 | 51.25 | No Payment |
| 1/31/2017 | $0.00 | $472,636.58 | $42,489.77 | 52.25 | No Payment |
| 2/1/2017 | $0.00 | $472,636.58 | $43,302.90 | 53.25 | No Payment |
| 2/2/2017 | $0.00 | $472,636.58 | $44,116.03 | 54.25 | No Payment |
| 2/3/2017 | $0.00 | $472,636.58 | $44,929.16 | 55.25 | No Payment |
| 2/6/2017 | $0.00 | $472,636.58 | $45,742.29 | 56.25 | No Payment |
| 2/7/2017 | $0.00 | $472,636.58 | $46,555.42 | 57.25 | No Payment |
| 2/8/2017 | $0.00 | $472,636.58 | $47,368.55 | 58.25 | No Payment |
| 2/9/2017 | $0.00 | $472,636.58 | $48,181.68 | 59.25 | No Payment |
| 2/10/2017 | $0.00 | $472,636.58 | $48,994.81 | 60.25 | No Payment |
| 2/13/2017 | $0.00 | $472,636.58 | $49,807.94 | 61.25 | No Payment |
| 2/14/2017 | $8,333.34 | $464,303.24 | $42,287.73 | 52.01 | Catchup Payment |
| 2/15/2017 | $0.00 | $464,303.24 | $43,100.86 | 53.01 | No Payment |
| 2/16/2017 | $0.00 | $464,303.24 | $43,913.99 | 54.01 | No Payment |
| 2/17/2017 | $0.00 | $464,303.24 | $44,727.12 | 55.01 | No Payment |
| 2/20/2017 | $0.00 | $464,303.24 | $45,540.25 | 56.01 | No Payment |
| 2/21/2017 | $0.00 | $464,303.24 | $46,353.38 | 57.01 | No Payment |
| 2/22/2017 | $0.00 | $464,303.24 | $47,166.51 | 58.01 | No Payment |
| 2/23/2017 | $0.00 | $464,303.24 | $47,979.64 | 59.01 | No Payment |
| 2/24/2017 | $0.00 | $464,303.24 | $48,792.77 | 60.01 | No Payment |
| 2/27/2017 | $0.00 | $464,303.24 | $49,605.90 | 61.01 | No Payment |
| 2/28/2017 | $0.00 | $464,303.24 | $50,419.03 | 62.01 | No Payment |
| 3/1/2017 | $0.00 | $464,303.24 | $51,232.16 | 63.01 | No Payment |
| 3/2/2017 | $0.00 | $464,303.24 | $52,045.29 | 64.01 | No Payment |
| 3/3/2017 | $0.00 | $464,303.24 | $52,858.42 | 65.01 | No Payment |
| 3/6/2017 | $0.00 | $464,303.24 | $53,671.55 | 66.01 | No Payment |
| 3/7/2017 | $0.00 | $464,303.24 | $54,484.68 | 67.01 | No Payment |
| 3/8/2017 | $0.00 | $464,303.24 | $55,297.81 | 68.01 | No Payment |
| 3/9/2017 | $0.00 | $464,303.24 | $56,110.94 | 69.01 | No Payment |
| 3/10/2017 | $0.00 | $464,303.24 | $56,924.07 | 70.01 | No Payment |
| 3/13/2017 | $0.00 | $464,303.24 | $57,737.20 | 71.01 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 3/14/2017 | $0.00 | $464,303.24 | $58,550.33 | 72.01 | No Payment |
| 3/15/2017 | $0.00 | $464,303.24 | $59,363.46 | 73.01 | No Payment |
| 3/16/2017 | $0.00 | $464,303.24 | $60,176.59 | 74.01 | No Payment |
| 3/17/2017 | $8,333.34 | $455,969.90 | $52,656.38 | 64.76 | Catchup Payment |
| 3/20/2017 | $0.00 | $455,969.90 | $53,469.51 | 65.76 | No Payment |
| 3/21/2017 | $0.00 | $455,969.90 | $54,282.64 | 66.76 | No Payment |
| 3/22/2017 | $0.00 | $455,969.90 | $55,095.77 | 67.76 | No Payment |
| 3/23/2017 | $0.00 | $455,969.90 | $55,908.90 | 68.76 | No Payment |
| 3/24/2017 | $0.00 | $455,969.90 | $56,722.03 | 69.76 | No Payment |
| 3/27/2017 | $0.00 | $455,969.90 | $57,535.16 | 70.76 | No Payment |
| 3/28/2017 | $0.00 | $455,969.90 | $58,348.29 | 71.76 | No Payment |
| 3/29/2017 | $0.00 | $455,969.90 | $59,161.42 | 72.76 | No Payment |
| 3/30/2017 | $0.00 | $455,969.90 | $59,974.55 | 73.76 | No Payment |
| 3/31/2017 | $0.00 | $455,969.90 | $60,787.68 | 74.76 | No Payment |
| 4/3/2017 | $0.00 | $455,969.90 | $61,600.81 | 75.76 | No Payment |
| 4/4/2017 | $0.00 | $455,969.90 | $62,413.94 | 76.76 | No Payment |
| 4/5/2017 | $0.00 | $455,969.90 | $63,227.07 | 77.76 | No Payment |
| 4/6/2017 | $0.00 | $455,969.90 | $64,040.20 | 78.76 | No Payment |
| 4/7/2017 | $0.00 | $455,969.90 | $64,853.33 | 79.76 | No Payment |
| 4/10/2017 | $0.00 | $455,969.90 | $65,666.46 | 80.76 | No Payment |
| 4/11/2017 | $0.00 | $455,969.90 | $66,479.59 | 81.76 | No Payment |
| 4/12/2017 | $0.00 | $455,969.90 | $67,292.72 | 82.76 | No Payment |
| 4/13/2017 | $0.00 | $455,969.90 | $68,105.85 | 83.76 | No Payment |
| 4/14/2017 | $8,333.34 | $447,636.56 | $60,585.64 | 74.51 | Catchup Payment |
| 4/17/2017 | $0.00 | $447,636.56 | $61,398.77 | 75.51 | No Payment |
| 4/18/2017 | $0.00 | $447,636.56 | $62,211.90 | 76.51 | No Payment |
| 4/19/2017 | $0.00 | $447,636.56 | $63,025.03 | 77.51 | No Payment |
| 4/20/2017 | $0.00 | $447,636.56 | $63,838.16 | 78.51 | No Payment |
| 4/21/2017 | $0.00 | $447,636.56 | $64,651.29 | 79.51 | No Payment |
| 4/24/2017 | $0.00 | $447,636.56 | $65,464.42 | 80.51 | No Payment |
| 4/25/2017 | $0.00 | $447,636.56 | $66,277.55 | 81.51 | No Payment |
| 4/26/2017 | $0.00 | $447,636.56 | $67,090.68 | 82.51 | No Payment |
| 4/27/2017 | $0.00 | $447,636.56 | $67,903.81 | 83.51 | No Payment |
| 4/28/2017 | $0.00 | $447,636.56 | $68,716.94 | 84.51 | No Payment |
| 5/1/2017 | $0.00 | $447,636.56 | $69,530.07 | 85.51 | No Payment |
| 5/2/2017 | $0.00 | $447,636.56 | $70,343.20 | 86.51 | No Payment |
| 5/3/2017 | $0.00 | $447,636.56 | $71,156.33 | 87.51 | No Payment |
| 5/4/2017 | $0.00 | $447,636.56 | $71,969.46 | 88.51 | No Payment |
| 5/5/2017 | $0.00 | $447,636.56 | $72,782.59 | 89.51 | No Payment |
| 5/8/2017 | $0.00 | $447,636.56 | $73,595.72 | 90.51 | No Payment |
| 5/9/2017 | $0.00 | $447,636.56 | $74,408.85 | 91.51 | No Payment |
| 5/10/2017 | $0.00 | $447,636.56 | $75,221.98 | 92.51 | No Payment |
| 5/11/2017 | $0.00 | $447,636.56 | $76,035.11 | 93.51 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 5/12/2017 | $0.00 | $447,636.56 | $76,848.24 | 94.51 | No Payment |
| 5/15/2017 | $0.00 | $447,636.56 | $77,661.37 | 95.51 | No Payment |
| 5/16/2017 | $8,333.34 | $439,303.22 | $70,141.16 | 86.26 | Catchup Payment |
| 5/17/2017 | $0.00 | $439,303.22 | $70,954.29 | 87.26 | No Payment |
| 5/18/2017 | $0.00 | $439,303.22 | $71,767.42 | 88.26 | No Payment |
| 5/19/2017 | $0.00 | $439,303.22 | $72,580.55 | 89.26 | No Payment |
| 5/22/2017 | $0.00 | $439,303.22 | $73,393.68 | 90.26 | No Payment |
| 5/23/2017 | $0.00 | $439,303.22 | $74,206.81 | 91.26 | No Payment |
| 5/24/2017 | $0.00 | $439,303.22 | $75,019.94 | 92.26 | No Payment |
| 5/25/2017 | $0.00 | $439,303.22 | $75,833.07 | 93.26 | No Payment |
| 5/26/2017 | $0.00 | $439,303.22 | $76,646.20 | 94.26 | No Payment |
| 5/29/2017 | $0.00 | $439,303.22 | $77,459.33 | 95.26 | No Payment |
| 5/30/2017 | $0.00 | $439,303.22 | $78,272.46 | 96.26 | No Payment |
| 5/31/2017 | $0.00 | $439,303.22 | $79,085.59 | 97.26 | No Payment |
| 6/1/2017 | $0.00 | $439,303.22 | $79,898.72 | 98.26 | No Payment |
| 6/2/2017 | $0.00 | $439,303.22 | $80,711.85 | 99.26 | No Payment |
| 6/5/2017 | $0.00 | $439,303.22 | $81,524.98 | 100.26 | No Payment |
| 6/6/2017 | $0.00 | $439,303.22 | $82,338.11 | 101.26 | No Payment |
| 6/7/2017 | $0.00 | $439,303.22 | $83,151.24 | 102.26 | No Payment |
| 6/8/2017 | $0.00 | $439,303.22 | $83,964.37 | 103.26 | No Payment |
| 6/9/2017 | $0.00 | $439,303.22 | $84,777.50 | 104.26 | No Payment |
| 6/12/2017 | $0.00 | $439,303.22 | $85,590.63 | 105.26 | No Payment |
| 6/13/2017 | $0.00 | $439,303.22 | $86,403.76 | 106.26 | No Payment |
| 6/14/2017 | $8,333.34 | $430,969.88 | $78,883.55 | 97.01 | Catchup Payment |
| 6/15/2017 | $0.00 | $430,969.88 | $79,696.68 | 98.01 | No Payment |
| 6/16/2017 | $0.00 | $430,969.88 | $80,509.81 | 99.01 | No Payment |
| 6/19/2017 | $0.00 | $430,969.88 | $81,322.94 | 100.01 | No Payment |
| 6/20/2017 | $0.00 | $430,969.88 | $82,136.07 | 101.01 | No Payment |
| 6/21/2017 | $0.00 | $430,969.88 | $82,949.20 | 102.01 | No Payment |
| 6/22/2017 | $0.00 | $430,969.88 | $83,762.33 | 103.01 | No Payment |
| 6/23/2017 | $0.00 | $430,969.88 | $84,575.46 | 104.01 | No Payment |
| 6/26/2017 | $0.00 | $430,969.88 | $85,388.59 | 105.01 | No Payment |
| 6/27/2017 | $0.00 | $430,969.88 | $86,201.72 | 106.01 | No Payment |
| 6/28/2017 | $0.00 | $430,969.88 | $87,014.85 | 107.01 | No Payment |
| 6/29/2017 | $0.00 | $430,969.88 | $87,827.98 | 108.01 | No Payment |
| 6/30/2017 | $0.00 | $430,969.88 | $88,641.11 | 109.01 | No Payment |
| 7/3/2017 | $0.00 | $430,969.88 | $89,454.24 | 110.01 | No Payment |
| 7/4/2017 | $0.00 | $430,969.88 | $90,267.37 | 111.01 | No Payment |
| 7/5/2017 | $0.00 | $430,969.88 | $91,080.50 | 112.01 | No Payment |
| 7/6/2017 | $0.00 | $430,969.88 | $91,893.63 | 113.01 | No Payment |
| 7/7/2017 | $0.00 | $430,969.88 | $92,706.76 | 114.01 | No Payment |
| 7/10/2017 | $0.00 | $430,969.88 | $93,519.89 | 115.01 | No Payment |
| 7/11/2017 | $0.00 | $430,969.88 | $94,333.02 | 116.01 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 7/12/2017 | $0.00 | $430,969.88 | $95,146.15 | 117.01 | No Payment |
| 7/13/2017 | $0.00 | $430,969.88 | $95,959.28 | 118.01 | No Payment |
| 7/14/2017 | $8,333.34 | $422,636.54 | $88,439.07 | 108.76 | Catchup Payment |
| 7/17/2017 | $0.00 | $422,636.54 | $89,252.20 | 109.76 | No Payment |
| 7/18/2017 | $0.00 | $422,636.54 | $90,065.33 | 110.76 | No Payment |
| 7/19/2017 | $0.00 | $422,636.54 | $90,878.46 | 111.76 | No Payment |
| 7/20/2017 | $0.00 | $422,636.54 | $91,691.59 | 112.76 | No Payment |
| 7/21/2017 | $0.00 | $422,636.54 | $92,504.72 | 113.76 | No Payment |
| 7/24/2017 | $0.00 | $422,636.54 | $93,317.85 | 114.76 | No Payment |
| 7/25/2017 | $0.00 | $422,636.54 | $94,130.98 | 115.76 | No Payment |
| 7/26/2017 | $0.00 | $422,636.54 | $94,944.11 | 116.76 | No Payment |
| 7/27/2017 | $0.00 | $422,636.54 | $95,757.24 | 117.76 | No Payment |
| 7/28/2017 | $0.00 | $422,636.54 | $96,570.37 | 118.76 | No Payment |
| 7/31/2017 | $0.00 | $422,636.54 | $97,383.50 | 119.76 | No Payment |
| 8/1/2017 | $0.00 | $422,636.54 | $98,196.63 | 120.76 | No Payment |
| 8/2/2017 | $0.00 | $422,636.54 | $99,009.76 | 121.76 | No Payment |
| 8/3/2017 | $0.00 | $422,636.54 | $99,822.89 | 122.76 | No Payment |
| 8/4/2017 | $0.00 | $422,636.54 | $100,636.02 | 123.76 | No Payment |
| 8/7/2017 | $0.00 | $422,636.54 | $101,449.15 | 124.76 | No Payment |
| 8/8/2017 | $0.00 | $422,636.54 | $102,262.28 | 125.76 | No Payment |
| 8/9/2017 | $0.00 | $422,636.54 | $103,075.41 | 126.76 | No Payment |
| 8/10/2017 | $0.00 | $422,636.54 | $103,888.54 | 127.76 | No Payment |
| 8/11/2017 | $8,333.34 | $414,303.20 | $96,368.33 | 118.52 | Catchup Payment |
| 8/14/2017 | $0.00 | $414,303.20 | $97,181.46 | 119.52 | No Payment |
| 8/15/2017 | $0.00 | $414,303.20 | $97,994.59 | 120.52 | No Payment |
| 8/16/2017 | $0.00 | $414,303.20 | $98,807.72 | 121.52 | No Payment |
| 8/17/2017 | $0.00 | $414,303.20 | $99,620.85 | 122.52 | No Payment |
| 8/18/2017 | $0.00 | $414,303.20 | $100,433.98 | 123.52 | No Payment |
| 8/21/2017 | $0.00 | $414,303.20 | $101,247.11 | 124.52 | No Payment |
| 8/22/2017 | $0.00 | $414,303.20 | $102,060.24 | 125.52 | No Payment |
| 8/23/2017 | $0.00 | $414,303.20 | $102,873.37 | 126.52 | No Payment |
| 8/24/2017 | $0.00 | $414,303.20 | $103,686.50 | 127.52 | No Payment |
| 8/25/2017 | $0.00 | $414,303.20 | $104,499.63 | 128.52 | No Payment |
| 8/28/2017 | $0.00 | $414,303.20 | $105,312.76 | 129.52 | No Payment |
| 8/29/2017 | $0.00 | $414,303.20 | $106,125.89 | 130.52 | No Payment |
| 8/30/2017 | $0.00 | $414,303.20 | $106,939.02 | 131.52 | No Payment |
| 8/31/2017 | $0.00 | $414,303.20 | $107,752.15 | 132.52 | No Payment |
| 9/1/2017 | $0.00 | $414,303.20 | $108,565.28 | 133.52 | No Payment |
| 9/4/2017 | $0.00 | $414,303.20 | $109,378.41 | 134.52 | No Payment |
| 9/5/2017 | $0.00 | $414,303.20 | $110,191.54 | 135.52 | No Payment |
| 9/6/2017 | $0.00 | $414,303.20 | $111,004.67 | 136.52 | No Payment |
| 9/7/2017 | $0.00 | $414,303.20 | $111,817.80 | 137.52 | No Payment |
| 9/8/2017 | $0.00 | $414,303.20 | $112,630.93 | 138.52 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 9/11/2017 | $0.00 | $414,303.20 | $113,444.06 | 139.52 | No Payment |
| 9/12/2017 | $0.00 | $414,303.20 | $114,257.19 | 140.52 | No Payment |
| 9/13/2017 | $0.00 | $414,303.20 | $115,070.32 | 141.52 | No Payment |
| 9/14/2017 | $8,333.34 | $405,969.86 | $107,550.11 | 132.27 | Catchup Payment |
| 9/15/2017 | $0.00 | $405,969.86 | $108,363.24 | 133.27 | No Payment |
| 9/18/2017 | $0.00 | $405,969.86 | $109,176.37 | 134.27 | No Payment |
| 9/19/2017 | $0.00 | $405,969.86 | $109,989.50 | 135.27 | No Payment |
| 9/20/2017 | $0.00 | $405,969.86 | $110,802.63 | 136.27 | No Payment |
| 9/21/2017 | $0.00 | $405,969.86 | $111,615.76 | 137.27 | No Payment |
| 9/22/2017 | $0.00 | $405,969.86 | $112,428.89 | 138.27 | No Payment |
| 9/25/2017 | $0.00 | $405,969.86 | $113,242.02 | 139.27 | No Payment |
| 9/26/2017 | $0.00 | $405,969.86 | $114,055.15 | 140.27 | No Payment |
| 9/27/2017 | $0.00 | $405,969.86 | $114,868.28 | 141.27 | No Payment |
| 9/28/2017 | $0.00 | $405,969.86 | $115,681.41 | 142.27 | No Payment |
| 9/29/2017 | $0.00 | $405,969.86 | $116,494.54 | 143.27 | No Payment |
| 10/2/2017 | $0.00 | $405,969.86 | $117,307.67 | 144.27 | No Payment |
| 10/3/2017 | $0.00 | $405,969.86 | $118,120.80 | 145.27 | No Payment |
| 10/4/2017 | $0.00 | $405,969.86 | $118,933.93 | 146.27 | No Payment |
| 10/5/2017 | $0.00 | $405,969.86 | $119,747.06 | 147.27 | No Payment |
| 10/6/2017 | $0.00 | $405,969.86 | $120,560.19 | 148.27 | No Payment |
| 10/9/2017 | $0.00 | $405,969.86 | $121,373.32 | 149.27 | No Payment |
| 10/10/2017 | $0.00 | $405,969.86 | $122,186.45 | 150.27 | No Payment |
| 10/11/2017 | $0.00 | $405,969.86 | $122,999.58 | 151.27 | No Payment |
| 10/12/2017 | $0.00 | $405,969.86 | $123,812.71 | 152.27 | No Payment |
| 10/13/2017 | $8,333.34 | $397,636.52 | $116,292.50 | 143.02 | Catchup Payment |
| 10/16/2017 | $0.00 | $397,636.52 | $117,105.63 | 144.02 | No Payment |
| 10/17/2017 | $0.00 | $397,636.52 | $117,918.76 | 145.02 | No Payment |
| 10/18/2017 | $0.00 | $397,636.52 | $118,731.89 | 146.02 | No Payment |
| 10/19/2017 | $0.00 | $397,636.52 | $119,545.02 | 147.02 | No Payment |
| 10/20/2017 | $0.00 | $397,636.52 | $120,358.15 | 148.02 | No Payment |
| 10/23/2017 | $0.00 | $397,636.52 | $121,171.28 | 149.02 | No Payment |
| 10/24/2017 | $0.00 | $397,636.52 | $121,984.41 | 150.02 | No Payment |
| 10/25/2017 | $0.00 | $397,636.52 | $122,797.54 | 151.02 | No Payment |
| 10/26/2017 | $0.00 | $397,636.52 | $123,610.67 | 152.02 | No Payment |
| 10/27/2017 | $0.00 | $397,636.52 | $124,423.80 | 153.02 | No Payment |
| 10/30/2017 | $0.00 | $397,636.52 | $125,236.93 | 154.02 | No Payment |
| 10/31/2017 | $0.00 | $397,636.52 | $126,050.06 | 155.02 | No Payment |
| 11/1/2017 | $0.00 | $397,636.52 | $126,863.19 | 156.02 | No Payment |
| 11/2/2017 | $0.00 | $397,636.52 | $127,676.32 | 157.02 | No Payment |
| 11/3/2017 | $0.00 | $397,636.52 | $128,489.45 | 158.02 | No Payment |
| 11/6/2017 | $0.00 | $397,636.52 | $129,302.58 | 159.02 | No Payment |
| 11/7/2017 | $0.00 | $397,636.52 | $130,115.71 | 160.02 | No Payment |
| 11/8/2017 | $0.00 | $397,636.52 | $130,928.84 | 161.02 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 11/9/2017 | $0.00 | $397,636.52 | $131,741.97 | 162.02 | No Payment |
| 11/10/2017 | $0.00 | $397,636.52 | $132,555.10 | 163.02 | No Payment |
| 11/13/2017 | $0.00 | $397,636.52 | $133,368.23 | 164.02 | No Payment |
| 11/14/2017 | $8,333.34 | $389,303.18 | $125,848.02 | 154.77 | Catchup Payment |
| 11/15/2017 | $0.00 | $389,303.18 | $126,661.15 | 155.77 | No Payment |
| 11/16/2017 | $0.00 | $389,303.18 | $127,474.28 | 156.77 | No Payment |
| 11/17/2017 | $0.00 | $389,303.18 | $128,287.41 | 157.77 | No Payment |
| 11/20/2017 | $0.00 | $389,303.18 | $129,100.54 | 158.77 | No Payment |
| 11/21/2017 | $0.00 | $389,303.18 | $129,913.67 | 159.77 | No Payment |
| 11/22/2017 | $0.00 | $389,303.18 | $130,726.80 | 160.77 | No Payment |
| 11/23/2017 | $0.00 | $389,303.18 | $131,539.93 | 161.77 | No Payment |
| 11/24/2017 | $0.00 | $389,303.18 | $132,353.06 | 162.77 | No Payment |
| 11/27/2017 | $0.00 | $389,303.18 | $133,166.19 | 163.77 | No Payment |
| 11/28/2017 | $0.00 | $389,303.18 | $133,979.32 | 164.77 | No Payment |
| 11/29/2017 | $0.00 | $389,303.18 | $134,792.45 | 165.77 | No Payment |
| 11/30/2017 | $0.00 | $389,303.18 | $135,605.58 | 166.77 | No Payment |
| 12/1/2017 | $0.00 | $389,303.18 | $136,418.71 | 167.77 | No Payment |
| 12/4/2017 | $0.00 | $389,303.18 | $137,231.84 | 168.77 | No Payment |
| 12/5/2017 | $0.00 | $389,303.18 | $138,044.97 | 169.77 | No Payment |
| 12/6/2017 | $0.00 | $389,303.18 | $138,858.10 | 170.77 | No Payment |
| 12/7/2017 | $0.00 | $389,303.18 | $139,671.23 | 171.77 | No Payment |
| 12/8/2017 | $0.00 | $389,303.18 | $140,484.36 | 172.77 | No Payment |
| 12/11/2017 | $0.00 | $389,303.18 | $141,297.49 | 173.77 | No Payment |
| 12/12/2017 | $0.00 | $389,303.18 | $142,110.62 | 174.77 | No Payment |
| 12/13/2017 | $0.00 | $389,303.18 | $142,923.75 | 175.77 | No Payment |
| 12/14/2017 | $8,333.34 | $380,969.84 | $135,403.54 | 166.52 | Catchup Payment |
| 12/15/2017 | $0.00 | $380,969.84 | $136,216.67 | 167.52 | No Payment |
| 12/18/2017 | $0.00 | $380,969.84 | $137,029.80 | 168.52 | No Payment |
| 12/19/2017 | $0.00 | $380,969.84 | $137,842.93 | 169.52 | No Payment |
| 12/20/2017 | $0.00 | $380,969.84 | $138,656.06 | 170.52 | No Payment |
| 12/21/2017 | $0.00 | $380,969.84 | $139,469.19 | 171.52 | No Payment |
| 12/22/2017 | $0.00 | $380,969.84 | $140,282.32 | 172.52 | No Payment |
| 12/25/2017 | $0.00 | $380,969.84 | $141,095.45 | 173.52 | No Payment |
| 12/26/2017 | $0.00 | $380,969.84 | $141,908.58 | 174.52 | No Payment |
| 12/27/2017 | $0.00 | $380,969.84 | $142,721.71 | 175.52 | No Payment |
| 12/28/2017 | $0.00 | $380,969.84 | $143,534.84 | 176.52 | No Payment |
| 12/29/2017 | $0.00 | $380,969.84 | $144,347.97 | 177.52 | No Payment |
| 1/1/2018 | $0.00 | $380,969.84 | $145,161.10 | 178.52 | No Payment |
| 1/2/2018 | $0.00 | $380,969.84 | $145,974.23 | 179.52 | No Payment |
| 1/3/2018 | $0.00 | $380,969.84 | $146,787.36 | 180.52 | No Payment |
| 1/4/2018 | $0.00 | $380,969.84 | $147,600.49 | 181.52 | No Payment |
| 1/5/2018 | $0.00 | $380,969.84 | $148,413.62 | 182.52 | No Payment |
| 1/8/2018 | $0.00 | $380,969.84 | $149,226.75 | 183.52 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 1/9/2018 | $0.00 | $380,969.84 | $150,039.88 | 184.52 | No Payment |
| 1/10/2018 | $0.00 | $380,969.84 | $150,853.01 | 185.52 | No Payment |
| 1/11/2018 | $0.00 | $380,969.84 | $151,666.14 | 186.52 | No Payment |
| 1/12/2018 | $0.00 | $380,969.84 | $152,479.27 | 187.52 | No Payment |
| 1/15/2018 | $0.00 | $380,969.84 | $153,292.40 | 188.52 | No Payment |
| 1/16/2018 | $0.00 | $380,969.84 | $154,105.53 | 189.52 | No Payment |
| 1/17/2018 | $0.00 | $380,969.84 | $154,918.66 | 190.52 | No Payment |
| 1/18/2018 | $8,333.34 | $372,636.50 | $147,398.45 | 181.27 | Catchup Payment |
| 1/19/2018 | $0.00 | $372,636.50 | $148,211.58 | 182.27 | No Payment |
| 1/22/2018 | $0.00 | $372,636.50 | $149,024.71 | 183.27 | No Payment |
| 1/23/2018 | $0.00 | $372,636.50 | $149,837.84 | 184.27 | No Payment |
| 1/24/2018 | $0.00 | $372,636.50 | $150,650.97 | 185.27 | No Payment |
| 1/25/2018 | $0.00 | $372,636.50 | $151,464.10 | 186.27 | No Payment |
| 1/26/2018 | $0.00 | $372,636.50 | $152,277.23 | 187.27 | No Payment |
| 1/29/2018 | $0.00 | $372,636.50 | $153,090.36 | 188.27 | No Payment |
| 1/30/2018 | $0.00 | $372,636.50 | $153,903.49 | 189.27 | No Payment |
| 1/31/2018 | $0.00 | $372,636.50 | $154,716.62 | 190.27 | No Payment |
| 2/1/2018 | $0.00 | $372,636.50 | $155,529.75 | 191.27 | No Payment |
| 2/2/2018 | $0.00 | $372,636.50 | $156,342.88 | 192.27 | No Payment |
| 2/5/2018 | $0.00 | $372,636.50 | $157,156.01 | 193.27 | No Payment |
| 2/6/2018 | $0.00 | $372,636.50 | $157,969.14 | 194.27 | No Payment |
| 2/7/2018 | $0.00 | $372,636.50 | $158,782.27 | 195.27 | No Payment |
| 2/8/2018 | $0.00 | $372,636.50 | $159,595.40 | 196.27 | No Payment |
| 2/9/2018 | $0.00 | $372,636.50 | $160,408.53 | 197.27 | No Payment |
| 2/12/2018 | $0.00 | $372,636.50 | $161,221.66 | 198.27 | No Payment |
| 2/13/2018 | $0.00 | $372,636.50 | $162,034.79 | 199.27 | No Payment |
| 2/14/2018 | $0.00 | $372,636.50 | $162,847.92 | 200.27 | No Payment |
| 2/15/2018 | $0.00 | $372,636.50 | $163,661.05 | 201.27 | No Payment |
| 2/16/2018 | $0.00 | $372,636.50 | $164,474.18 | 202.27 | No Payment |
| 2/19/2018 | $0.00 | $372,636.50 | $165,287.31 | 203.27 | No Payment |
| 2/20/2018 | $8,333.34 | $364,303.16 | $157,767.10 | 194.02 | Catchup Payment |
| 2/21/2018 | $0.00 | $364,303.16 | $158,580.23 | 195.02 | No Payment |
| 2/22/2018 | $0.00 | $364,303.16 | $159,393.36 | 196.02 | No Payment |
| 2/23/2018 | $0.00 | $364,303.16 | $160,206.49 | 197.02 | No Payment |
| 2/26/2018 | $0.00 | $364,303.16 | $161,019.62 | 198.02 | No Payment |
| 2/27/2018 | $0.00 | $364,303.16 | $161,832.75 | 199.02 | No Payment |
| 2/28/2018 | $0.00 | $364,303.16 | $162,645.88 | 200.02 | No Payment |
| 3/1/2018 | $0.00 | $364,303.16 | $163,459.01 | 201.02 | No Payment |
| 3/2/2018 | $0.00 | $364,303.16 | $164,272.14 | 202.02 | No Payment |
| 3/5/2018 | $0.00 | $364,303.16 | $165,085.27 | 203.02 | No Payment |
| 3/6/2018 | $0.00 | $364,303.16 | $165,898.40 | 204.02 | No Payment |
| 3/7/2018 | $0.00 | $364,303.16 | $166,711.53 | 205.02 | No Payment |
| 3/8/2018 | $0.00 | $364,303.16 | $167,524.66 | 206.02 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 3/9/2018 | $0.00 | $364,303.16 | $168,337.79 | 207.02 | No Payment |
| 3/12/2018 | $0.00 | $364,303.16 | $169,150.92 | 208.02 | No Payment |
| 3/13/2018 | $0.00 | $364,303.16 | $169,964.05 | 209.02 | No Payment |
| 3/14/2018 | $8,333.34 | $355,969.82 | $162,443.84 | 199.78 | Catchup Payment |
| 3/15/2018 | $0.00 | $355,969.82 | $163,256.97 | 200.78 | No Payment |
| 3/16/2018 | $0.00 | $355,969.82 | $164,070.10 | 201.78 | No Payment |
| 3/19/2018 | $0.00 | $355,969.82 | $164,883.23 | 202.78 | No Payment |
| 3/20/2018 | $0.00 | $355,969.82 | $165,696.36 | 203.78 | No Payment |
| 3/21/2018 | $0.00 | $355,969.82 | $166,509.49 | 204.78 | No Payment |
| 3/22/2018 | $0.00 | $355,969.82 | $167,322.62 | 205.78 | No Payment |
| 3/23/2018 | $0.00 | $355,969.82 | $168,135.75 | 206.78 | No Payment |
| 3/26/2018 | $0.00 | $355,969.82 | $168,948.88 | 207.78 | No Payment |
| 3/27/2018 | $0.00 | $355,969.82 | $169,762.01 | 208.78 | No Payment |
| 3/28/2018 | $0.00 | $355,969.82 | $170,575.14 | 209.78 | No Payment |
| 3/29/2018 | $0.00 | $355,969.82 | $171,388.27 | 210.78 | No Payment |
| 3/30/2018 | $0.00 | $355,969.82 | $172,201.40 | 211.78 | No Payment |
| 4/2/2018 | $0.00 | $355,969.82 | $173,014.53 | 212.78 | No Payment |
| 4/3/2018 | $0.00 | $355,969.82 | $173,827.66 | 213.78 | No Payment |
| 4/4/2018 | $0.00 | $355,969.82 | $174,640.79 | 214.78 | No Payment |
| 4/5/2018 | $0.00 | $355,969.82 | $175,453.92 | 215.78 | No Payment |
| 4/6/2018 | $0.00 | $355,969.82 | $176,267.05 | 216.78 | No Payment |
| 4/9/2018 | $0.00 | $355,969.82 | $177,080.18 | 217.78 | No Payment |
| 4/10/2018 | $0.00 | $355,969.82 | $177,893.31 | 218.78 | No Payment |
| 4/11/2018 | $0.00 | $355,969.82 | $178,706.44 | 219.78 | No Payment |
| 4/12/2018 | $0.00 | $355,969.82 | $179,519.57 | 220.78 | No Payment |
| 4/13/2018 | $8,333.34 | $347,636.48 | $171,999.36 | 211.53 | Catchup Payment |
| 4/16/2018 | $0.00 | $347,636.48 | $172,812.49 | 212.53 | No Payment |
| 4/17/2018 | $0.00 | $347,636.48 | $173,625.62 | 213.53 | No Payment |
| 4/18/2018 | $0.00 | $347,636.48 | $174,438.75 | 214.53 | No Payment |
| 4/19/2018 | $0.00 | $347,636.48 | $175,251.88 | 215.53 | No Payment |
| 4/20/2018 | $0.00 | $347,636.48 | $176,065.01 | 216.53 | No Payment |
| 4/23/2018 | $0.00 | $347,636.48 | $176,878.14 | 217.53 | No Payment |
| 4/24/2018 | $0.00 | $347,636.48 | $177,691.27 | 218.53 | No Payment |
| 4/25/2018 | $0.00 | $347,636.48 | $178,504.40 | 219.53 | No Payment |
| 4/26/2018 | $0.00 | $347,636.48 | $179,317.53 | 220.53 | No Payment |
| 4/27/2018 | $0.00 | $347,636.48 | $180,130.66 | 221.53 | No Payment |
| 4/30/2018 | $0.00 | $347,636.48 | $180,943.79 | 222.53 | No Payment |
| 5/1/2018 | $0.00 | $347,636.48 | $181,756.92 | 223.53 | No Payment |
| 5/2/2018 | $0.00 | $347,636.48 | $182,570.05 | 224.53 | No Payment |
| 5/3/2018 | $0.00 | $347,636.48 | $183,383.18 | 225.53 | No Payment |
| 5/4/2018 | $0.00 | $347,636.48 | $184,196.31 | 226.53 | No Payment |
| 5/7/2018 | $0.00 | $347,636.48 | $185,009.44 | 227.53 | No Payment |
| 5/8/2018 | $0.00 | $347,636.48 | $185,822.57 | 228.53 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 5/9/2018 | $0.00 | $347,636.48 | $186,635.70 | 229.53 | No Payment |
| 5/10/2018 | $0.00 | $347,636.48 | $187,448.83 | 230.53 | No Payment |
| 5/11/2018 | $0.00 | $347,636.48 | $188,261.96 | 231.53 | No Payment |
| 5/14/2018 | $0.00 | $347,636.48 | $189,075.09 | 232.53 | No Payment |
| 5/15/2018 | $8,333.34 | $339,303.14 | $181,554.88 | 223.28 | Catchup Payment |
| 5/16/2018 | $0.00 | $339,303.14 | $182,368.01 | 224.28 | No Payment |
| 5/17/2018 | $0.00 | $339,303.14 | $183,181.14 | 225.28 | No Payment |
| 5/18/2018 | $0.00 | $339,303.14 | $183,994.27 | 226.28 | No Payment |
| 5/21/2018 | $0.00 | $339,303.14 | $184,807.40 | 227.28 | No Payment |
| 5/22/2018 | $0.00 | $339,303.14 | $185,620.53 | 228.28 | No Payment |
| 5/23/2018 | $0.00 | $339,303.14 | $186,433.66 | 229.28 | No Payment |
| 5/24/2018 | $0.00 | $339,303.14 | $187,246.79 | 230.28 | No Payment |
| 5/25/2018 | $0.00 | $339,303.14 | $188,059.92 | 231.28 | No Payment |
| 5/28/2018 | $0.00 | $339,303.14 | $188,873.05 | 232.28 | No Payment |
| 5/29/2018 | $0.00 | $339,303.14 | $189,686.18 | 233.28 | No Payment |
| 5/30/2018 | $0.00 | $339,303.14 | $190,499.31 | 234.28 | No Payment |
| 5/31/2018 | $0.00 | $339,303.14 | $191,312.44 | 235.28 | No Payment |
| 6/1/2018 | $0.00 | $339,303.14 | $192,125.57 | 236.28 | No Payment |
| 6/4/2018 | $0.00 | $339,303.14 | $192,938.70 | 237.28 | No Payment |
| 6/5/2018 | $0.00 | $339,303.14 | $193,751.83 | 238.28 | No Payment |
| 6/6/2018 | $0.00 | $339,303.14 | $194,564.96 | 239.28 | No Payment |
| 6/7/2018 | $0.00 | $339,303.14 | $195,378.09 | 240.28 | No Payment |
| 6/8/2018 | $0.00 | $339,303.14 | $196,191.22 | 241.28 | No Payment |
| 6/11/2018 | $0.00 | $339,303.14 | $197,004.35 | 242.28 | No Payment |
| 6/12/2018 | $0.00 | $339,303.14 | $197,817.48 | 243.28 | No Payment |
| 6/13/2018 | $0.00 | $339,303.14 | $198,630.61 | 244.28 | No Payment |
| 6/14/2018 | $0.00 | $339,303.14 | $199,443.74 | 245.28 | No Payment |
| 6/15/2018 | $0.00 | $339,303.14 | $200,256.87 | 246.28 | No Payment |
| 6/18/2018 | $0.00 | $339,303.14 | $201,070.00 | 247.28 | No Payment |
| 6/19/2018 | $0.00 | $339,303.14 | $201,883.13 | 248.28 | No Payment |
| 6/20/2018 | $0.00 | $339,303.14 | $202,696.26 | 249.28 | No Payment |
| 6/21/2018 | $0.00 | $339,303.14 | $203,509.39 | 250.28 | No Payment |
| 6/22/2018 | $0.00 | $339,303.14 | $204,322.52 | 251.28 | No Payment |
| 6/25/2018 | $8,333.34 | $330,969.80 | $196,802.31 | 242.03 | Catchup Payment |
| 6/26/2018 | $0.00 | $330,969.80 | $197,615.44 | 243.03 | No Payment |
| 6/27/2018 | $0.00 | $330,969.80 | $198,428.57 | 244.03 | No Payment |
| 6/28/2018 | $0.00 | $330,969.80 | $199,241.70 | 245.03 | No Payment |
| 6/29/2018 | $0.00 | $330,969.80 | $200,054.83 | 246.03 | No Payment |
| 7/2/2018 | $0.00 | $330,969.80 | $200,867.96 | 247.03 | No Payment |
| 7/3/2018 | $0.00 | $330,969.80 | $201,681.09 | 248.03 | No Payment |
| 7/4/2018 | $0.00 | $330,969.80 | $202,494.22 | 249.03 | No Payment |
| 7/5/2018 | $0.00 | $330,969.80 | $203,307.35 | 250.03 | No Payment |
| 7/6/2018 | $0.00 | $330,969.80 | $204,120.48 | 251.03 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 7/9/2018 | $0.00 | $330,969.80 | $204,933.61 | 252.03 | No Payment |
| 7/10/2018 | $0.00 | $330,969.80 | $205,746.74 | 253.03 | No Payment |
| 7/11/2018 | $0.00 | $330,969.80 | $206,559.87 | 254.03 | No Payment |
| 7/12/2018 | $0.00 | $330,969.80 | $207,373.00 | 255.03 | No Payment |
| 7/13/2018 | $0.00 | $330,969.80 | $208,186.13 | 256.03 | No Payment |
| 7/16/2018 | $0.00 | $330,969.80 | $208,999.26 | 257.03 | No Payment |
| 7/17/2018 | $0.00 | $330,969.80 | $209,812.39 | 258.03 | No Payment |
| 7/18/2018 | $0.00 | $330,969.80 | $210,625.52 | 259.03 | No Payment |
| 7/19/2018 | $0.00 | $330,969.80 | $211,438.65 | 260.03 | No Payment |
| 7/20/2018 | $0.00 | $330,969.80 | $212,251.78 | 261.03 | No Payment |
| 7/23/2018 | $0.00 | $330,969.80 | $213,064.91 | 262.03 | No Payment |
| 7/24/2018 | $0.00 | $330,969.80 | $213,878.04 | 263.03 | No Payment |
| 7/25/2018 | $0.00 | $330,969.80 | $214,691.17 | 264.03 | No Payment |
| 7/26/2018 | $0.00 | $330,969.80 | $215,504.30 | 265.03 | No Payment |
| 7/27/2018 | $0.00 | $330,969.80 | $216,317.43 | 266.03 | No Payment |
| 7/30/2018 | $0.00 | $330,969.80 | $217,130.56 | 267.03 | No Payment |
| 7/31/2018 | $0.00 | $330,969.80 | $217,943.69 | 268.03 | No Payment |
| 8/1/2018 | $0.00 | $330,969.80 | $218,756.82 | 269.03 | No Payment |
| 8/2/2018 | $0.00 | $330,969.80 | $219,569.95 | 270.03 | No Payment |
| 8/3/2018 | $0.00 | $330,969.80 | $220,383.08 | 271.03 | No Payment |
| 8/6/2018 | $0.00 | $330,969.80 | $221,196.21 | 272.03 | No Payment |
| 8/7/2018 | $0.00 | $330,969.80 | $222,009.34 | 273.03 | No Payment |
| 8/8/2018 | $0.00 | $330,969.80 | $222,822.47 | 274.03 | No Payment |
| 8/9/2018 | $0.00 | $330,969.80 | $223,635.60 | 275.03 | No Payment |
| 8/10/2018 | $0.00 | $330,969.80 | $224,448.73 | 276.03 | No Payment |
| 8/13/2018 | $0.00 | $330,969.80 | $225,261.86 | 277.03 | No Payment |
| 8/14/2018 | $0.00 | $330,969.80 | $226,074.99 | 278.03 | No Payment |
| 8/15/2018 | $0.00 | $330,969.80 | $226,888.12 | 279.03 | No Payment |
| 8/16/2018 | $0.00 | $330,969.80 | $227,701.25 | 280.03 | No Payment |
| 8/17/2018 | $0.00 | $330,969.80 | $228,514.38 | 281.03 | No Payment |
| 8/20/2018 | $0.00 | $330,969.80 | $229,327.51 | 282.03 | No Payment |
| 8/21/2018 | $0.00 | $330,969.80 | $230,140.64 | 283.03 | No Payment |
| 8/22/2018 | $0.00 | $330,969.80 | $230,953.77 | 284.03 | No Payment |
| 8/23/2018 | $0.00 | $330,969.80 | $231,766.90 | 285.03 | No Payment |
| 8/24/2018 | $0.00 | $330,969.80 | $232,580.03 | 286.03 | No Payment |
| 8/27/2018 | $0.00 | $330,969.80 | $233,393.16 | 287.03 | No Payment |
| 8/28/2018 | $0.00 | $330,969.80 | $234,206.29 | 288.03 | No Payment |
| 8/29/2018 | $0.00 | $330,969.80 | $235,019.42 | 289.03 | No Payment |
| 8/30/2018 | $0.00 | $330,969.80 | $235,832.55 | 290.03 | No Payment |
| 8/31/2018 | $0.00 | $330,969.80 | $236,645.68 | 291.03 | No Payment |
| 9/3/2018 | $0.00 | $330,969.80 | $237,458.81 | 292.03 | No Payment |
| 9/4/2018 | $0.00 | $330,969.80 | $238,271.94 | 293.03 | No Payment |
| 9/5/2018 | $0.00 | $330,969.80 | $239,085.07 | 294.03 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 9/6/2018 | $0.00 | $330,969.80 | $239,898.20 | 295.03 | No Payment |
| 9/7/2018 | $0.00 | $330,969.80 | $240,711.33 | 296.03 | No Payment |
| 9/10/2018 | $0.00 | $330,969.80 | $241,524.46 | 297.03 | No Payment |
| 9/11/2018 | $0.00 | $330,969.80 | $242,337.59 | 298.03 | No Payment |
| 9/12/2018 | $0.00 | $330,969.80 | $243,150.72 | 299.03 | No Payment |
| 9/13/2018 | $0.00 | $330,969.80 | $243,963.85 | 300.03 | No Payment |
| 9/14/2018 | $0.00 | $330,969.80 | $244,776.98 | 301.03 | No Payment |
| 9/17/2018 | $0.00 | $330,969.80 | $245,590.11 | 302.03 | No Payment |
| 9/18/2018 | $0.00 | $330,969.80 | $246,403.24 | 303.03 | No Payment |
| 9/19/2018 | $0.00 | $330,969.80 | $247,216.37 | 304.03 | No Payment |
| 9/20/2018 | $0.00 | $330,969.80 | $248,029.50 | 305.03 | No Payment |
| 9/21/2018 | $0.00 | $330,969.80 | $248,842.63 | 306.03 | No Payment |
| 9/24/2018 | $0.00 | $330,969.80 | $249,655.76 | 307.03 | No Payment |
| 9/25/2018 | $0.00 | $330,969.80 | $250,468.89 | 308.03 | No Payment |
| 9/26/2018 | $0.00 | $330,969.80 | $251,282.02 | 309.03 | No Payment |
| 9/27/2018 | $0.00 | $330,969.80 | $252,095.15 | 310.03 | No Payment |
| 9/28/2018 | $0.00 | $330,969.80 | $252,908.28 | 311.03 | No Payment |
| 10/1/2018 | $0.00 | $330,969.80 | $253,721.41 | 312.03 | No Payment |
| 10/2/2018 | $0.00 | $330,969.80 | $254,534.54 | 313.03 | No Payment |
| 10/3/2018 | $0.00 | $330,969.80 | $255,347.67 | 314.03 | No Payment |
| 10/4/2018 | $0.00 | $330,969.80 | $256,160.80 | 315.03 | No Payment |
| 10/5/2018 | $0.00 | $330,969.80 | $256,973.93 | 316.03 | No Payment |
| 10/8/2018 | $0.00 | $330,969.80 | $257,787.06 | 317.03 | No Payment |
| 10/9/2018 | $0.00 | $330,969.80 | $258,600.19 | 318.03 | No Payment |
| 10/10/2018 | $0.00 | $330,969.80 | $259,413.32 | 319.03 | No Payment |
| 10/11/2018 | $0.00 | $330,969.80 | $260,226.45 | 320.03 | No Payment |
| 10/12/2018 | $0.00 | $330,969.80 | $261,039.58 | 321.03 | No Payment |
| 10/15/2018 | $0.00 | $330,969.80 | $261,852.71 | 322.03 | No Payment |
| 10/16/2018 | $0.00 | $330,969.80 | $262,665.84 | 323.03 | No Payment |
| 10/17/2018 | $0.00 | $330,969.80 | $263,478.97 | 324.03 | No Payment |
| 10/18/2018 | $0.00 | $330,969.80 | $264,292.10 | 325.03 | No Payment |
| 10/19/2018 | $0.00 | $330,969.80 | $265,105.23 | 326.03 | No Payment |
| 10/22/2018 | $0.00 | $330,969.80 | $265,918.36 | 327.03 | No Payment |
| 10/23/2018 | $0.00 | $330,969.80 | $266,731.49 | 328.03 | No Payment |
| 10/24/2018 | $0.00 | $330,969.80 | $267,544.62 | 329.03 | No Payment |
| 10/25/2018 | $0.00 | $330,969.80 | $268,357.75 | 330.03 | No Payment |
| 10/26/2018 | $0.00 | $330,969.80 | $269,170.88 | 331.03 | No Payment |
| 10/29/2018 | $0.00 | $330,969.80 | $269,984.01 | 332.03 | No Payment |
| 10/30/2018 | $0.00 | $330,969.80 | $270,797.14 | 333.03 | No Payment |
| 10/31/2018 | $0.00 | $330,969.80 | $271,610.27 | 334.03 | No Payment |
| 11/1/2018 | $0.00 | $330,969.80 | $272,423.40 | 335.03 | No Payment |
| 11/2/2018 | $0.00 | $330,969.80 | $273,236.53 | 336.03 | No Payment |
| 11/5/2018 | $0.00 | $330,969.80 | $274,049.66 | 337.03 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 11/6/2018 | $0.00 | $330,969.80 | $274,862.79 | 338.03 | No Payment |
| 11/7/2018 | $0.00 | $330,969.80 | $275,675.92 | 339.03 | No Payment |
| 11/8/2018 | $0.00 | $330,969.80 | $276,489.05 | 340.03 | No Payment |
| 11/9/2018 | $0.00 | $330,969.80 | $277,302.18 | 341.03 | No Payment |
| 11/12/2018 | $0.00 | $330,969.80 | $278,115.31 | 342.03 | No Payment |
| 11/13/2018 | $0.00 | $330,969.80 | $278,928.44 | 343.03 | No Payment |
| 11/14/2018 | $0.00 | $330,969.80 | $279,741.57 | 344.03 | No Payment |
| 11/15/2018 | $0.00 | $330,969.80 | $280,554.70 | 345.03 | No Payment |
| 11/16/2018 | $0.00 | $330,969.80 | $281,367.83 | 346.03 | No Payment |
| 11/19/2018 | $0.00 | $330,969.80 | $282,180.96 | 347.03 | No Payment |
| 11/20/2018 | $0.00 | $330,969.80 | $282,994.09 | 348.03 | No Payment |
| 11/21/2018 | $0.00 | $330,969.80 | $283,807.22 | 349.03 | No Payment |
| 11/22/2018 | $0.00 | $330,969.80 | $284,620.35 | 350.03 | No Payment |
| 11/23/2018 | $0.00 | $330,969.80 | $285,433.48 | 351.03 | No Payment |
| 11/26/2018 | $0.00 | $330,969.80 | $286,246.61 | 352.03 | No Payment |
| 11/27/2018 | $0.00 | $330,969.80 | $287,059.74 | 353.03 | No Payment |
| 11/28/2018 | $0.00 | $330,969.80 | $287,872.87 | 354.03 | No Payment |
| 11/29/2018 | $0.00 | $330,969.80 | $288,686.00 | 355.03 | No Payment |
| 11/30/2018 | $0.00 | $330,969.80 | $289,499.13 | 356.03 | No Payment |
| 12/3/2018 | $0.00 | $330,969.80 | $290,312.26 | 357.03 | No Payment |
| 12/4/2018 | $0.00 | $330,969.80 | $291,125.39 | 358.03 | No Payment |
| 12/5/2018 | $0.00 | $330,969.80 | $291,938.52 | 359.03 | No Payment |
| 12/6/2018 | $0.00 | $330,969.80 | $292,751.65 | 360.03 | No Payment |
| 12/7/2018 | $0.00 | $330,969.80 | $293,564.78 | 361.03 | No Payment |
| 12/10/2018 | $0.00 | $330,969.80 | $294,377.91 | 362.03 | No Payment |
| 12/11/2018 | $0.00 | $330,969.80 | $295,191.04 | 363.03 | No Payment |
| 12/12/2018 | $0.00 | $330,969.80 | $296,004.17 | 364.03 | No Payment |
| 12/13/2018 | $0.00 | $330,969.80 | $296,817.30 | 365.03 | No Payment |
| 12/14/2018 | $0.00 | $330,969.80 | $297,630.43 | 366.03 | No Payment |
| 12/17/2018 | $0.00 | $330,969.80 | $298,443.56 | 367.03 | No Payment |
| 12/18/2018 | $0.00 | $330,969.80 | $299,256.69 | 368.03 | No Payment |
| 12/19/2018 | $0.00 | $330,969.80 | $300,069.82 | 369.03 | No Payment |
| 12/20/2018 | $0.00 | $330,969.80 | $300,882.95 | 370.03 | No Payment |
| 12/21/2018 | $0.00 | $330,969.80 | $301,696.08 | 371.03 | No Payment |
| 12/24/2018 | $0.00 | $330,969.80 | $302,509.21 | 372.03 | No Payment |
| 12/25/2018 | $0.00 | $330,969.80 | $303,322.34 | 373.03 | No Payment |
| 12/26/2018 | $0.00 | $330,969.80 | $304,135.47 | 374.03 | No Payment |
| 12/27/2018 | $0.00 | $330,969.80 | $304,948.60 | 375.03 | No Payment |
| 12/28/2018 | $0.00 | $330,969.80 | $305,761.73 | 376.03 | No Payment |
| 12/31/2018 | $0.00 | $330,969.80 | $306,574.86 | 377.03 | No Payment |
| 1/1/2019 | $0.00 | $330,969.80 | $307,387.99 | 378.03 | No Payment |
| 1/2/2019 | $0.00 | $330,969.80 | $308,201.12 | 379.03 | No Payment |
| 1/3/2019 | $0.00 | $330,969.80 | $309,014.25 | 380.03 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 1/4/2019 | $0.00 | $330,969.80 | $309,827.38 | 381.03 | No Payment |
| 1/7/2019 | $0.00 | $330,969.80 | $310,640.51 | 382.03 | No Payment |
| 1/8/2019 | $0.00 | $330,969.80 | $311,453.64 | 383.03 | No Payment |
| 1/9/2019 | $0.00 | $330,969.80 | $312,266.77 | 384.03 | No Payment |
| 1/10/2019 | $0.00 | $330,969.80 | $313,079.90 | 385.03 | No Payment |
| 1/11/2019 | $0.00 | $330,969.80 | $313,893.03 | 386.03 | No Payment |
| 1/14/2019 | $0.00 | $330,969.80 | $314,706.16 | 387.03 | No Payment |
| 1/15/2019 | $0.00 | $330,969.80 | $315,519.29 | 388.03 | No Payment |
| 1/16/2019 | $0.00 | $330,969.80 | $316,332.42 | 389.03 | No Payment |
| 1/17/2019 | $0.00 | $330,969.80 | $317,145.55 | 390.03 | No Payment |
| 1/18/2019 | $0.00 | $330,969.80 | $317,958.68 | 391.03 | No Payment |
| 1/21/2019 | $0.00 | $330,969.80 | $318,771.81 | 392.03 | No Payment |
| 1/22/2019 | $0.00 | $330,969.80 | $319,584.94 | 393.03 | No Payment |
| 1/23/2019 | $0.00 | $330,969.80 | $320,398.07 | 394.03 | No Payment |
| 1/24/2019 | $0.00 | $330,969.80 | $321,211.20 | 395.03 | No Payment |
| 1/25/2019 | $0.00 | $330,969.80 | $322,024.33 | 396.03 | No Payment |
| 1/28/2019 | $0.00 | $330,969.80 | $322,837.46 | 397.03 | No Payment |
| 1/29/2019 | $0.00 | $330,969.80 | $323,650.59 | 398.03 | No Payment |
| 1/30/2019 | $0.00 | $330,969.80 | $324,463.72 | 399.03 | No Payment |
| 1/31/2019 | $0.00 | $330,969.80 | $325,276.85 | 400.03 | No Payment |
| 2/1/2019 | $0.00 | $330,969.80 | $326,089.98 | 401.03 | No Payment |
| 2/4/2019 | $0.00 | $330,969.80 | $326,903.11 | 402.03 | No Payment |
| 2/5/2019 | $0.00 | $330,969.80 | $327,716.24 | 403.03 | No Payment |
| 2/6/2019 | $0.00 | $330,969.80 | $328,529.37 | 404.03 | No Payment |
| 2/7/2019 | $0.00 | $330,969.80 | $329,342.50 | 405.03 | No Payment |
| 2/8/2019 | $0.00 | $330,969.80 | $330,155.63 | 406.03 | No Payment |
| 2/11/2019 | $0.00 | $330,969.80 | $330,968.76 | 407.03 | No Payment |
| 2/12/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/13/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/14/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/15/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/18/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/19/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/20/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/21/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/22/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/25/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/26/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/27/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 2/28/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/1/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/4/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/5/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 3/6/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/7/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/8/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/11/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/12/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/13/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/14/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/15/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/18/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/19/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/20/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/21/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/22/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/25/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/26/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/27/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/28/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 3/29/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/1/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/2/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/3/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/4/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/5/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/8/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/9/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/10/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/11/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/12/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/15/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/16/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/17/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/18/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/19/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/22/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/23/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/24/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/25/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/26/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/29/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 4/30/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/1/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/2/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/3/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |

| Payment Date | Revenue | Daily Balance | Past Due Balance | Missing Payments | Payment Comments |
|---|---|---|---|---|---|
| 5/6/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/7/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/8/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/9/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/10/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/13/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/14/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/15/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/16/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/17/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |
| 5/20/2019 | $0.00 | $330,969.80 | $330,969.80 | 407.03 | No Payment |



4120 Southwest Freeway, Suite 150
Houston, Texas 77056
P: 713.600.8500
F: 713.600.8585
www.law-crg.com

**CERSONSKY
ROSEN &
GARCÍA P.C.**

ATTORNEYS AND COUNSELORS AT LAW

June 6, 2019



*Via CM/RRR: #7016 1970 0000 9045 0348*
*& First-Class U.S. Mail*
Samuel B. Pegram MD PA d/b/a Rheumatic Disease Clinic of Houston
c/o Samuel B. Pegram, President and Owner
4825 Almeda Rd
Houston, Texas 77004

*Via CM/RRR: #7016 1970 0000 9045 0355*
*& First-Class U.S. Mail*
Samuel B. Pegram MD, Individually
3004 Meadowmist Court
Pearland, Texas 77584

     Re:    Business Loan Agreement dated January 25, 2016
               Between Samuel B. Pegram MD PA d/b/a Rheumatic Disease Clinic of Houston and WebBank, assigned to Can Capital Asset Servicing, Inc. f/k/a NewLogic Business Loans, Inc. ("CCAS")

Dear Mr. Pegram,

    This letter is written to you as the President and Owner of Samuel B. Pegram MD PA d/b/a Rheumatic Disease Clinic of Houston, and you individually, as guarantor, of the performance of all convenants contained in the above referenced Business Loan Agreement.

    As of June 6, 2019, the principal amount owed CCAS was $330,969.80. No payments have been received since June 25, 2018. If you dispute this amount, please state in writing all payments, credits or offsets for which you believe credit has not been given and state in writing the amount you believe is due and show how that amount is calculated.

    Samuel B. Pegram MD PA d/b/a Rheumatic Disease Clinic of Houston, and/or you failed to make the required payments as per the Business Loan Agreement, page 2, paragraph 4. The damages caused by such action is $330,969.80. Demand is made upon Samuel B. Pegram MD PA d/b/a Rheumatic Disease Clinic of Houston, and you individually, as guarantor, to fulfill the obligations under the Business Loan Agreement and Guarantee with CCAS.

**EXHIBIT**

4

      CCAS has had to retain the undersigned attorney with regard to this matter. Demand is made for payment of $330,969.80, and if such sum is not paid and a lawsuit is filed, CCAS will seek its court costs, reasonable and necessary legal fees as allowed by Texas law along with interest, if any, as allowed by law.  Please send payment within ten (10) days in a cashier's check payable to the Cersonsky, Rosen & Garcia, P.C. Trust Account.

      Very truly yours,

      M. H. Cersonsky

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Samuel B. Pegram MD PA
d/b/a Rheumatic Disease Clinic of Houston
c/o Samuel B. Pegram, President and Owner
4825 Almeda Rd
Houston, Texas 77004

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Alyona McNeil_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
X Alyona McNeil   6/11/19

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7016 1970 0000 9045 0348

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

**EXHIBIT**
4-A